1999 UT 25

SPRINGVILLE CITIZENS FOR A BET-
TER COMMUNITY, including Leland
and LaJean Davies, Keith and Joanne
Haeffele, Michael and Linda Krau,
Blaine and Shirley Robertson, Brian
and Marsha Ryder, and Russel and Nan-
cy Weiser, and High Line Ditch Water
Users, including Bryan and Belinda
Adams, Bert and Debra Bartholomew,
Lynn and Maxine Bartholomew, Darrell
and Dorothy Bickmore, Merlene Bona,
Carl and Rebecca Burrows, Donald and
Debra Bushman, Walter and Manita
Fowler, David and Ruth Fuller, Donald
and Laura Gage, Michael and LaRae
Hill, Dale and Melba Jarman, Glendon
and Leila C. Johnson, Linda Powers,
Blaine and Shirley Robertson, Ronald
and Utawna Witney, Plaintiffs and Ap-
pellants,

v.

The CITY OF SPRINGVILLE, a munici-
pality under Utah law (aka Springville
City, a municipal corporation or Spring-
ville City, a municipality), Mayor Hal
Wing, in his official capacity, and John
and Jane Does I–XV, Defendants and
Appellees.

No. 980028.

Supreme Court of Utah.

March 19, 1999.

Matthew Hilton, Springville, for plaintiffs.

Jody K. Burnett, Salt Lake City, for defendants.

RUSSON, Justice:

¶ 1 This action arises from a land use decision made by Springville City, granting T. Roger Peay approval to develop a Planned Unit Development ("P.U.D."). Plaintiffs, owners of property neighboring the P.U.D., filed suit against the City challenging the P.U.D.'s approval. The district court granted summary judgment in favor of the City. We reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

### FACTS

¶ 2 Roger Peay sought approval to develop a P.U.D. in the foothills of Springville, Utah. To obtain approval, Peay had to follow the procedure outlined in the Springville City ordinances. *See* Springville City Code §§ 11–4–304, 11–4–202. These ordinances require P.U.D. applicants to submit numerous documents regarding the proposed development. A process then commences in which first the city planning commission and then the city council review the development plans, with each entity imposing modifications and conditions, if necessary, on those plans. The council is authorized to grant final P.U.D. approval, which is evidenced by the adoption of an ordinance amending the City's zoning map.

¶ 3 On July 11, 1995, Peay appeared before the planning commission seeking sketch plan approval for a thirty-three-acre, forty-eight-lot P.U.D. called Powerhouse Mountain Estates. Between July of 1995 and May of 1996, Peay attended five planning commission meetings and three city council meetings. At each meeting, Peay sought either sketch plan approval or preliminary approval for the P.U.D. On each occasion, the commission and the council imposed modifications on Peay's plans in order to meet the City's P.U.D. requirements. There was considerable public participation at these meetings, including input from those who are plaintiffs herein. Ultimately, the council rejected Peay's proposal.

¶ 4 On May 28, 1996, Peay started anew before the planning commission. In response to the previously expressed concerns of the council and the commission, the proposed P.U.D. now consisted of thirty-five lots, contained no "deep lots," provided for curbs and gutters on each side of the P.U.D. road and a sidewalk on the downhill side of the road, and provided for an entrance road forty-six feet wide and an interior road forty-one feet wide. The commission voted to give the P.U.D. sketch plan approval and to recommend approval of the preliminary plan.

¶ 5 Thereafter, on July 16, 1996, Peay sought city council approval for the P.U.D. After extended public comment, the council voted four to one to give the P.U.D. preliminary approval subject to twenty-nine conditions. On September 10, 1996, Peay then appeared before the planning commission seeking final approval for the P.U.D., which was now called Stonebury Estates. The commission reviewed the twenty-nine conditions and, contrary to the city code, voted to send the matter to the council without a recommendation, positive or negative.

¶ 6 In a letter to the city attorney dated September 19, 1996, Peay detailed the specific actions he had taken in response to the

twenty-nine conditions. On September 30, 1996, the city attorney submitted to the mayor and the city council his review of Peay's compliance with the conditions. He opined that Peay had not complied with many aspects of the conditions and that final approval should therefore be withheld.

¶ 7 On October 1, 1996, Peay sought final approval from the council for what he called the "first phase" of the P.U.D., which consisted of seventeen of the thirty-five lots. After a detailed discussion of each of the conditions imposed, the council voted to meet with Peay for a work session, the purpose of which was to evaluate Peay's compliance with the conditions.

¶ 8 Prior to the work session, at the council's request, Peay responded in writing to the city attorney's concerns and conclusions regarding the twenty-nine conditions. Thereafter, with this information before it, the council concluded that sixteen conditions had been met entirely, seven conditions had been met partially or were ready to be met, and six conditions required council action. These six conditions were the focus of the work session.

¶ 9 On October 15, 1996, the council then voted to adopt nine additional conditions, which modified some of the previous twenty-nine conditions. Among other things, these additional conditions (1) allowed the thirty-five-lot P.U.D. to be developed in phases, (2) allowed four of the lots to have less than 20,000 square feet but not less than 17,000 square feet, (3) required Peay to cover the highline ditch through the entire development, and (4) provided that the homeowners' association would own the spring protection area as a common area. Peay agreed to comply with all nine conditions. The council, however, did not refer these additional conditions to the commission for its review, recommendation, or approval, as mandated by the city code.

¶ 10 At a council meeting on November 5, 1996, Peay sought final approval for the seventeen lots comprising the first phase of the P.U.D. After more discussion of the conditions, the council voted to give the first phase

"tentative final approval." Then, on November 11, 1996, the council adopted ordinance 19–96, which amended the City's zoning map and gave final approval to the first phase of the P.U.D. This ordinance specifically required compliance with "approved plans, plats, documents, conditions of approval and agreements." Peay ultimately complied with all the conditions imposed by the council.

¶ 11 Plaintiffs thereafter commenced this action against the City in district court, challenging the council's approval of the P.U.D. pursuant to Utah Code Ann. § 10–9–1001, which states:

> Any person adversely affected by any decision made in the exercise of the provisions of this chapter may file a petition for review of the decision with the district court within 30 days after the local decision is rendered.
>
> The courts shall:
>
> (a) presume that land use decisions and regulations are valid; and
>
> (b) determine only whether or not the decision is *arbitrary, capricious, or illegal.*

Utah Code Ann. § 10–9–1001(2) & (3) (1996) (emphasis added).

¶ 12 Plaintiffs alleged that the City's approval of the P.U.D. was arbitrary, capricious, and illegal because the City failed to strictly follow its own ordinances, which, under the City's own code, were mandatory. Plaintiffs also alleged violations of state statutory requirements and of the state and federal constitutions. Plaintiffs sought declaratory and injunctive relief and monetary damages.

¶ 13 After conducting discovery, the City moved for summary judgment. The district court held that the City had substantially complied with the ordinances governing approval of the P.U.D. and, on that basis, granted the City's motion for summary judgment. This appeal followed.

¶ 14 On appeal, plaintiffs argue that summary judgment was improper because the City's decision to approve the P.U.D. was arbitrary, capricious, and illegal.[1] According

---

1. We note our disapproval of plaintiffs' methods of circumventing the fifty-page limit for appellate

to plaintiffs, the decision was illegal because the City failed to comply strictly with several of the ordinances governing P.U.D. approval, many of which include the terms "shall" and "must." Plaintiffs emphasize that under the City's own statutory standard of interpretation, the "[w]ords 'shall' and 'must' are always mandatory." Springville City Code § 11–10–101(4). Plaintiffs claim that a number of such mandatory procedures outlined as subsections of City Code § 11–4–202 were not satisfied by the City, as well as several other mandatory requirements concerning P.U.D. improvements and documentation under City Code §§ 11–4–301 to –308.

¶ 15 In addition, plaintiffs contend that the City violated City Code § 11–5–7(4), which states that the "Planning Commission *shall not* approve any preliminary plat for any subdivision" unless the irrigation company or persons entitled to use the irrigation ditches "certify that the drawing [showing the location of all irrigation ditches] is a true and accurate representation." (Emphasis added.) Plaintiffs argue that this ordinance was violated when such a certification had not been made prior to the commission's granting the P.U.D. preliminary approval or considering its final approval.

¶ 16 Plaintiffs further assert that the City ran afoul of City Code § 11–5–9, which provides, "The Planning Commission *shall* review the final plat, final engineering drawings and documents, and shall act to approve the plan [or] disapprove the plan," and Utah Code Ann. § 10–9–204(5), which states, "The planning commission *shall* ... (5) recommend approval or denial of subdivision applications as provided in this chapter." (Emphasis added.) Plaintiffs argue that the commission violated this ordinance and statute when, after reviewing the plans submitted for final approval, it voted simply to send the matter to the council without a recommendation, either positive or negative. Plaintiffs contend that the lack of such a recommendation cannot be construed as an implicit approval of the plans because certain

amendments to those plans did not exist at the time and, after the amendments were made, the plans were not remanded to the commission for its review.

¶ 17 Plaintiffs also argue that the City breached section 11–5–10 of its code, which states, "If modifications are required [by the city council], such modifications *must* be referred to the Planning Commission and be approved by the Commission." (Emphasis added.) Plaintiffs assert that this ordinance was violated when the additional nine conditions imposed by the council on October 15, 1996, were not sent to the commission for its review, recommendation, or approval.

¶ 18 In addition to these alleged violations, plaintiffs charge that the City violated certain provisions of state statutory law. They claim the City breached Utah Code Ann. §§ 10–9–703 and 10–9–707(2)(a) by, in essence, granting variances which, under these statutes, should have been decided by the board of adjustments. Plaintiffs also posit that the City allowed certain plats to be recorded in violation of both Utah Code Ann. § 10–9–811(1)(b) and some of the conditions of approval imposed on the P.U.D., such as the requirement of eliminating flag lots and tendering water rights. Plaintiffs further claim that the City breached Utah Code Ann. § 10–9–704(1)(a) by not allowing certain grievances to be presented to the board of adjustments.

¶ 19 Finally, plaintiffs contend that the City's decision to approve the P.U.D. was arbitrary and capricious because (1) it was illegal, on the grounds set forth above, and (2) it was not supported by substantial evidence because some of the required documents, which plaintiffs claim were mandatory for the decision making process, were not before the city council or planning commission when they made their respective decisions.

¶ 20 The City responds that its approval of the P.U.D. was not arbitrary, capricious, or

briefs, *see* Utah R.App. P. 24(f). Plaintiffs' brief contains numerous, lengthy footnotes that set forth key arguments (the opening brief contains 104 footnotes, some of which consume up to three-fourths of a page). Also, plaintiffs' discus-

sion of central points is cursory and incomplete, and many of their citations to the record are simply references to arguments made to the district court.

illegal because it substantially complied with its ordinances in approving the P.U.D. According to the City, strict compliance with the ordinances was not necessary because the ordinances are procedural in nature and because less than complete compliance with such ordinances did not prejudice plaintiffs. The City emphasizes that the approval process for the P.U.D. spanned more than a year, during which time Peay attended seven planning commission meetings and six city council meetings wherein various concerns were discussed, by both city officials and plaintiffs, and numerous conditions imposed. The City stresses that all of the requirements complained about by plaintiffs were eventually met or substantially satisfied.

¶ 21 The issue before us, therefore, is whether the City's approval of the P.U.D. was arbitrary, capricious, or illegal.[2]

## STANDARD OF REVIEW

¶ 22 Summary judgment is appropriate only when there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). In reviewing a grant of summary judgment, we do not defer to the legal conclusions of the district court, but review them for correctness. When reviewing a municipality's land use decision, our review is limited to determining "whether . . . the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3)(b) (1996).

## ANALYSIS

¶ 23 A municipality's land use decisions are entitled to a great deal of defer-

ence. *See Xanthos v. Board of Adjustment,* 685 P.2d 1032, 1034 (Utah 1984); *Triangle Oil, Inc. v. North Salt Lake Corp.,* 609 P.2d 1338, 1339–40 (Utah 1980); *Cottonwood Heights Citizens Ass'n v. Board of Comm'rs,* 593 P.2d 138, 140 (Utah 1979); *Naylor v. Salt Lake City Corp.,* 17 Utah 2d 300, 410 P.2d 764 (1966). Therefore, "the courts generally will not so interfere with the actions of a city council unless its action is outside of its authority or is so wholly discordant to reason and justice that its action must be deemed capricious and arbitrary and thus in violation of the complainant's rights." *Triangle Oil,* 609 P.2d at 1340. Indeed, the statute that forms the basis of this appeal requires the courts to "presume that land use decisions and regulations are valid." Utah Code Ann. § 10–9–1001(3)(a). However, this discretion is not completely unfettered, and the presumption is not absolute. If a municipality's land use decision is arbitrary, capricious, or illegal, it will not be upheld. *See id.* § 10–9–1001(3)(b).

¶ 24 In the present case, plaintiffs argue that the City's decision to approve the P.U.D. was arbitrary and capricious. A municipality's land use decision is arbitrary and capricious if it is not supported by substantial evidence. *See Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 604 (Utah Ct. App.1995). In evaluating the City's decision under this standard, we review the evidence in the record to ensure that the City proceeded within the limits of fairness and acted in good faith. *See id.* We also determine

---

2. Plaintiffs also raise a panoply of constitutional issues. We do not address these issues because plaintiffs have failed to brief them adequately. *See* Utah R.App. P. 24(i) ("All briefs under this rule must be concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial and scandalous matters. Briefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court . . . .") and Utah R.App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities . . . relied on."). Plaintiffs' brief on these issues is poorly organized, confusing, and difficult to follow. It is frequently difficult to determine exactly what assertions are being made and the substance of the

accompanying arguments. We can certainly comprehend the district court's observation that "plaintiffs spent considerable effort wandering in fields of irrelevancy." Furthermore, many of plaintiffs' constitutional arguments are premised on the existence of constitutional liberty and property interests which plaintiffs fail to define and which are not supported by any authority. Their bald assertion that the interests are "self-evident" is insufficient. *See also State v. Carter,* 776 P.2d 886, 888 (Utah 1989) ("[T]his Court need not analyze and address in writing each and every argument, issue, or claim raised. . . . Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

whether, in light of the evidence before the City, a reasonable mind could reach the same conclusion as the City. *See id.; see also* 2 Young, *Anderson's American Law of Zoning* § 11.11, at 461 (4th ed.1996) (noting that when reviewing an ordinance that approves a P.U.D., courts determine whether there is support for the approval and whether the decision was reasonable). We do not, however, weigh the evidence anew or substitute our judgment for that of the municipality. *See Patterson,* 893 P.2d at 604; *see also Xanthos,* 685 P.2d at 1035.

■ ¶ 25 In the case at bar, the undisputed facts demonstrate that the City's decision was not arbitrary or capricious but was the result of careful consideration and was supported by substantial evidence. Of significant import, consideration of the P.U.D. spanned nearly a year and a half and involved more than a dozen separate meetings wherein public input was heard, objections voiced, and modifications to the P.U.D. imposed. Although certain materials were not timely submitted, the majority of the required documentation was before the planning commission and the city council when the P.U.D. ultimately was approved. That documentation, as well as the other evidence before the commission and the council, supported approval of the P.U.D. Moreover, throughout the approval process and in an effort to meet the P.U.D. requirements, the city council required Peay to satisfy numerous conditions concerning the proposed development, all of which Peay eventually fulfilled. In short, the undisputed evidence reveals without question that substantial evidence supported the City's decision and that a reasonable person could have reached the same decision as the City. We conclude, therefore, that the City's decision to approve the P.U.D. was not arbitrary or capricious.

¶ 26 This conclusion does not end our inquiry, however. Under Utah Code Ann. § 10–9–1001(3)(b), we must also determine whether the City's decision was illegal. Plaintiffs argue convincingly that the City's decision to approve the P.U.D. was illegal because the City violated its own ordinances during the approval process. Plaintiffs high-

light that compliance with the city ordinances at issue was, under the City's own legislatively enacted standard, mandatory. Plaintiffs point to Springville City ordinance 11–10–101, which states, "For purposes of this Title, certain words and terms are defined as follows: ... (4) *Words 'shall' and 'must' are always mandatory.*" (Emphasis added.)

¶ 27 Title 11 of the Springville ordinances, entitled "Development Code," details the procedures and requirements for P.U.D. approval, including those that plaintiffs contend the City violated. Those procedures and requirements, as indicated in the ordinances quoted above, frequently are prefaced by the words "shall" and "must." Thus, according to the City's own rule of interpretation, compliance with the P.U.D. procedures and requirements containing these words was mandatory.

¶ 28 In its ruling granting summary judgment in favor of the City, the district court appeared to recognize the mandatory nature of the city ordinances but concluded nonetheless that substantial compliance with those ordinances was sufficient. In fact, one of the express legal principles upon which the district court premised its ruling was that "[t]he city's actions approving the PUD must be upheld if those actions are in substantial compliance with the city's ordinances."

■ ¶ 29 The district court's use of the substantial compliance doctrine in the face of ordinances that are expressly mandatory was erroneous. While substantial compliance with matters in which a municipality has discretion may indeed suffice, it does not when the municipality itself has legislatively removed any such discretion. The fundamental consideration in interpreting legislation, whether at the state or local level, is legislative intent. *See Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1030 (Utah 1983). Application of the substantial compliance doctrine where the ordinances at issue are explicitly mandatory contravenes the unmistakable intent of those ordinances.

■ ¶ 30 Municipal zoning authorities are bound by the terms and standards of applicable zoning ordinances and are not at liberty to make land use decisions in derogation

thereof. *See Thurston v. Cache County*, 626 P.2d 440, 444–45 (Utah 1981). The irony of the City's position on appeal is readily apparent: the City contends that it need only "substantially comply" with ordinances it has legislatively deemed to be mandatory. Stated simply, the City cannot "change the rules halfway through the game." *Brendle v. City of Draper*, 937 P.2d 1044, 1048 (Utah Ct.App. 1997). The City was not entitled to disregard its mandatory ordinances. Because the City did not properly comply with the ordinances governing P.U.D. approval, we conclude that under Utah Code Ann. § 10–9–1001(3)(b), the City's decision approving the P.U.D. was illegal.

¶ 31 The City's failure to pass the legality requirement of section 10–9–1001(3)(b), however, does not automatically entitle plaintiffs to the relief they request. Rather, plaintiffs must establish that they were prejudiced by the City's noncompliance with its ordinances or, in other words, how, if at all, the City's decision would have been different and what relief, if any, they are entitled to as a result. *See, e.g., Board of Educ. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983) (noting that recovery for failure of county to follow mandatory statutory requirements required showing of prejudice from such failure); *see also Anderson's American Law of Zoning* § 11.24 (explaining that party challenging approval of P.U.D. must show "actual injury").

¶ 32 With respect to the City's alleged violations of state statutory requirements, namely, Utah Code Ann. §§ 10–9–204, 10–9–703, 10–9–704(1)(a), 10–9–707(2)(a), and 10–9–811(1)(b), as outlined herein, it appears that the district court summarily dismissed these claims without analysis. With the exception of the alleged violation of section 10–9–703, the district court articulated no basis for rejecting these claims, thus preventing us from reviewing the correctness of those rulings. As to section 10–9–703, the district court simply concluded that plaintiffs could not appeal the overall approval of the P.U.D. to the board of adjustments; this, however, overlooked the nature of plaintiffs' claims under that section, namely, that certain City actions apart from the final P.U.D. approval

were appealable to the board of adjustments, i.e., the City's issuance of building permit 03675 and the recording of Plat 4. Thus, whether section 10–9–703 was violated, as well as the other enumerated sections, must be addressed as part of the proceedings on remand.

## CONCLUSION

¶ 33 The district court's grant of summary judgment is therefore reversed, and this matter is remanded for further proceedings.

¶ 34 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON'S opinion.

