IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Moab Local Green Party, Living Rivers, Julianne Fitzgerald, and Natalie McDowell, | ) ) ) ) | OPINION |
| | | Case No. 20100931-CA |
| Petitioners and Appellants, | ) ) | |
| | ) | F I L E D |
| v. | ) ) | (April 12, 2012) |
| Moab City, Moab City Planning Commission, and Moab City Board of Adjustment, | ) ) ) ) ) | 2012 UT App 113 |
| Respondents and Appellees. | ) ) | |
| LB Moab Land Company, LLC, | ) ) ) | |
| Intervenor and Appellee. | ) | |

-----

Seventh District, Moab Department, 080700176
The Honorable Lyle R. Anderson

Attorneys:    Joel Ban, Salt Lake City, for Appellants
            Christopher G. McAnany, Grand Junction, Colorado, for Appellees
            Moab City, Moab City Planning Commission, and Moab City Board of
            Adjustment
            Jody K. Burnett and Timothy J. Bywater, Salt Lake City, for Appellee LB
            Moab Land Company, LLC

-----

Before Judges McHugh, Davis, and Thorne.

THORNE, Judge:

¶1      Moab Local Green Party, Living Rivers, Julianne Fitzgerald, and Natalie McDowell (collectively, Moab Local Green) appeal from the district court's decision upholding the Moab City Board of Adjustment's (the Board) approval of LB Moab Land Company, LLC's (LB Moab) preliminary development plan for Lionsback Resort, pursuant to Moab City's master planned development (MPD) ordinances. We affirm the district court's decision.


                                BACKGROUND

¶2      LB Moab is seeking to develop a parcel of land in Moab, Utah. LB Moab's proposed project is the Lionsback Resort, a mixed use residential, commercial, and hotel development named for a prominent nearby geological feature, the Lion's Back sandstone ridge. Due to the location of the proposed development, LB Moab was required to seek approval for the project as an MPD pursuant to Moab City's MPD ordinances.

¶3      Moab City's MPD ordinances provide for a four-stage review process for proposed MPDs: (1) a preapplication meeting; (2) a concept review; (3) a preliminary review; and (4) a final review or site plan review. *See generally* Moab, Utah, Mun. Code § 17.65.080(A). LB Moab apparently completed its preapplication meeting without incident or challenge. LB Moab then submitted an application for a concept review. Moab City's Planning Commission (the Commission) reviewed LB Moab's concept plan at an October 2007 public hearing and approved the concept plan subject to certain conditions. No appeal was taken from the Commission's concept plan approval.

¶4      LB Moab then submitted its preliminary MPD application for the Commission's review. The Commission apparently considered LB Moab's application to be sufficient for review. The Commission reviewed LB Moab's preliminary plan at a May 2008 public hearing and recommended its approval. The Moab City Council (the City Council) discussed the matter at two meetings in June and July 2008, after which it also approved the preliminary plan, again subject to certain conditions.

¶5     Moab Local Green appealed the approval of the preliminary plan to the Board. Among other issues,[1] Moab Local Green argued that there was insufficient evidence to allow approval of the preliminary plan because certain required materials had not been included in LB Moab's application for preliminary review.  The Board reviewed the materials submitted by LB Moab in its preliminary MPD plan review application and conducted a two-day public hearing in August 2008.  The Board then determined that the Commission and the City Council had complied with applicable ordinances and that their approval of LB Moab's preliminary plan was supported by substantial evidence.

¶6     Moab Local Green then filed an action in district court seeking review of the Board's decision.[2]  Moab Local Green argued that the Board's decision was arbitrary, capricious, or illegal because there was insufficient evidence that LB Moab's preliminary plan as approved contained each of the many specific elements required by Moab Municipal Code section 17.65.100, which governs the content of preliminary MPD plans. *See generally id.* § 17.65.100.  Among the missing elements, Moab Local Green argued that the preliminary plan failed to contain required materials pertaining to archaeological and cultural resources; traffic, trails, and circulation; stormwater drainage; landscape design; and covenants, codes, and restrictions (CC&Rs).

¶7     The district court affirmed the Board's decision, explaining,

> It is important to note at the outset that the challenged decision was not a final approval of a subdivision.  Rather, it is a preliminary approval of a Master Planned Development ("MPD") within the City of Moab's Sensitive Area Resort Zone.  A review of LB Moab's Final MPD Plan lies in the future.
>
>         . . . .
>
> A common thread which runs through [Moab Local Green's] arguments is the idea that the [City] Council and

---

1.  The other issues that Moab Local Green raised below, such as challenges to the adequacy of public notices, are not raised in this appeal.

2.  For simplicity, we refer solely to the Board rather than distinguishing between acts of the Board and the Commission or City Council.

the [Board] are required to exalt form over substance, require the submission of documents with the right titles, and interpret every provision of each statute or ordinance in the [manners] most favorable to petitioners[, Moab Local Green]. This is not the law. The Council and the [Board] stand as arbiters between those who pursue development and those who would forbid it. Under the direction of state law, the City of Moab has adopted processes for resolving those conflicts. As long as the Council and the [Board] are substantially complying with those processes and acting on the bases of substantial evidence, the court should not act as a nit-picking referee on a crusade to expose any error, no matter how minor.

Nothing in the record persuades this court that the approval of the [Lionsback Resort] Plat was illegal, based on arbitrary or capricious determinations or resulted from substantial failure to comply with proper processes. The decision of the [Board] is accordingly affirmed.

Moab Local Green now appeals the district court's decision to this court.

ISSUE AND STANDARD OF REVIEW

¶8  Moab Local Green argues that the district court erred by finding that there was substantial evidence to support the Board's approval of LB Moab's preliminary MPD plan.[3]  "When a district court reviews an order of a local land use authority and we

---

3. Moab Local Green also raises an argument that development of the Lionsback Resort is governed not only by Moab City's MPD ordinances but additionally by its general subdivision ordinances. However, this appeal is from the approval of a preliminary plan under the MPD ordinances, and Moab Local Green has failed to present argument in its appellate briefing as to why any failure to comply with the subdivision ordinances would preclude the approval of a preliminary plan under the MPD ordinances generally or under the circumstances of this case. For these reasons, we deem this issue to be inadequately briefed. *See generally Brussow v. Webster*, 2011 UT App 193, ¶ 10, 258

(continued...)

exercise appellate review of the district court's judgment, we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the district court's decision." *Pacific W. Cmtys., Inc. v. Grantsville City*, 2009 UT App 291, ¶ 13, 221 P.3d 280 (internal quotation marks omitted). "[O]ur review is limited to whether a land use authority's decision is arbitrary, capricious, or illegal." *Id.* (internal quotation marks omitted).

ANALYSIS

¶9     Moab Local Green argues that the district court erred by upholding the Board's approval of LB Moab's preliminary MPD plan when there was insufficient evidence to establish that the plan contained certain required elements. Moab Local Green reasons that the review criteria established in the municipal code required the Board to "determine whether . . . [t]he site plan satisfies the requirements pursuant to this and all other applicable ordinances." *See generally* Moab, Utah, Mun. Code § 17.65.030(A)(1).[4] Moab Local Green then points to municipal code section 17.65.100, which states that "[a] complete preliminary development plan application shall include" certain elements, which are enumerated in section 17.65.100(A)–(N). *See generally id.* § 17.65.100. Reading the two ordinances together, Moab Local Green argues that section 17.65.030(A)(1) required the Board to ensure that LB Moab's preliminary plan contained each and every element listed in section 17.65.100(A)–(N) and that the Board's approval of a preliminary plan that did not contain each and every such element constituted an illegal act.

---

3. (...continued)
P.3d 615 (mem.) ("An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (internal quotation marks omitted)), *cert. denied*, 268 P.3d 192 (Utah 2011). Accordingly, we decline to address it.

4. Moab Local Green's appellate brief also cites Utah Code section 10-9a-801(3)(d) for the asserted proposition that "the statutory scheme that allows for judicial review contemplates determination of whether a land use decision violates an ordinance." *See generally* Utah Code Ann. § 10-9a-801(3)(d) (2007) ("A determination of illegality requires a determination that the decision, ordinance, or regulation violates a law, statute, or ordinance in effect at the time the decision was made . . . .").

¶10　We assume, for purposes of this appeal, that Moab Local Green has established that at least some aspects of LB Moab's preliminary MPD plan failed to contain elements enumerated in municipal code section 17.65.100(A)–(N).[5] However, Moab Local Green has not convinced us that these omissions render the Board's preliminary approval of the plan illegal. We agree with the district court's general observation that this is a preliminary, rather than final, MPD plan review, and we do not read municipal code section 17.65.030(A)(1) as applying to such preliminary reviews. Perhaps more importantly, section 17.65.100 draws a clear distinction between the elements required in an approved preliminary MPD plan and those that are to be included in a "complete preliminary development plan *application*." *See id.* § 17.65.100 (emphasis added). The deficiencies identified by Moab Local Green all go to the completeness of LB Moab's application for preliminary review rather than to the adequacy of the plan itself.[6] For these reasons, we affirm the district court's decision.

### I. Review and Approval Requirements Under Moab City's MPD Ordinances

¶11　We begin with an overview of Moab City's MPD review and approval process, as governed by municipal code sections 17.65.030 to 17.65.110. As noted earlier, "[t]here

---

5. For example, section 17.65.100(C) mandates that a complete preliminary MPD plan application contain a traffic, trails, and circulation plan that "shall incorporate the . . . design features of all motorized and nonmotorized streets, trails and parking areas." Moab, Utah, Mun. Code § 17.65.100(C). Neither Moab City nor LB Moab directs us to any place in the record showing the design features of nonmotorized trails, and LB Moab conceded before the Board that the issue of trail surfaces had yet to be decided and "will have to be submitted in [the] final plan." Moab Local Green also makes a persuasive argument that LB Moab's drainage plan's conclusion that "developed flows will not have a significant impact on existing drainage" is inadequate to satisfy the ordinance's requirement that drainage plans demonstrate "*no* net increase in off-site stormwater discharge." *See id.* § 17.65.100(E)(3) (emphasis added).

6. Moab Local Green also makes a brief, general assertion that deficiencies in LB Moab's application necessarily precluded the Board from complying with its obligation to determine whether the preliminary MPD plan "accommodate[d] and preserve[d] any features of historic, cultural, or archaeological value." *See* Moab, Utah, Mun. Code § 17.65.030(A)(6). However, Moab Local Green has not identified any such features other than the project's namesake Lion's Back sandstone ridge and has not persuaded us that the Board exceeded the bounds of its discretion in approving LB Moab's preliminary MPD plan based on the information presented.

are four required review steps to a master planned development approval." Moab, Utah, Mun. Code § 17.65.080(A). These four steps are the preapplication meeting, the concept review, the preliminary review, and the final review or site plan review. *See id.* Whether a particular MPD undergoes a final review or a series of site plan reviews is dependent on whether the project is phased. *See id.* § 17.65.080. "[An MPD] that has an approved preliminary development plan shall only be required to complete a final plat or site plan review for individual phases or portions of the development. Any [MPD] without phasing shall complete a final development plan review." *Id.* Each step of the review process is further defined by ordinance.

¶12 By far, the step with the least guidance and fewest requirements is the preapplication meeting. The Moab Municipal Code merely states that "[a] preapplication conference shall be held with the planning staff and/or planning commission in order for the applicant to generally describe the proposed development concept and receive professional recommendation based upon the city's requirements; and to become acquainted with the master planned development procedures and related requirements." *Id.* § 17.65.080(A)(1).

¶13 The remaining steps are governed in considerably greater detail, and each has its own dedicated code section. The second stage review plan, or concept plan, "shall include an area plan that depicts the development site concept including the locations of existing infrastructure and buildings." *Id.* § 17.65.090. Additionally, a concept MPD plan "shall include" a vicinity plan, a site inventory, a conceptual layout, architectural concepts, and the establishment of key observation points. *See id.* § 17.65.090(A)–(E). The requirements for each of these five additional components are set out in substantial detail. *See id.*

¶14 The third stage of the MPD review process, the preliminary review, is at issue in this case.

> The preliminary development plan shall identify the final proposed location of all lots, tracts, parcels, open space, rights-of-way, building envelopes, and other significant features. Components of this submittal may be combined into one or more site plans or reports provided that they are clear, legible and successfully demonstrate their purpose.

*Id.* § 17.65.100. The ordinance then states that a "complete preliminary development plan application shall include the following components," *see id.,* and lists these

mandatory components as a significant features plan; an open space plan; a traffic, trails, and circulation plan; a utility plan; a grading and drainage plan and report; a landscape and irrigation plan; a signage plan; an exterior lighting plan; an architectural design plan; a phasing plan; a proposed set of CC&Rs; other reports, studies, or illustrative renderings as required by ordinance or by the land use authority; and a title report. *See id.* § 17.65.100(A)–(N). Most of these components are individually defined in considerable detail.[7] *See id.*

¶15    The fourth and final stage of the MPD approval process is the final development plan review or site plan review. *See id.* § 17.65.110. A final plan has ten mandatory components similar in nature to those required in the preliminary plan application. *See id.* § 17.65.110(A)–(J). These components "shall . . . [be shown] in detail" in the final plan. *See id.* § 17.65.110. One of these ten components is the "Site Plan," defined as a "[d]etailed site plan with complete dimensions showing precise locations of all buildings and structures, lot or parcel sizes and locations, designations of open spaces and special use areas, [and] detailed circulation pattern including proposed ownership." *Id.* § 17.65.110(A). The other nine components include such elements as a parking plan, an engineering plan, and proof of title to the developed property. *See id.* § 17.65.110(B)–(J).

¶16    The municipal code also has a specific ordinance governing the review and approval of MPD plans. *See id.* § 17.65.030. Municipal code section 17.65.030 enumerates various criteria that are to be considered in reviewing MPDs. *See id.* § 17.65.030(A). Among other required review criteria, section 17.65.030(A)(1) requires that, "[i]n reviewing a master planned development, the land use authority shall determine whether . . . [t]he site plan satisfies the requirements pursuant to this and all

---

7.  For example, the required traffic, trails, and circulation plan

shall incorporate the location and design features of all motorized and nonmotorized streets, trails and parking areas; including:
1.  Circulation of automobile traffic;
2.  Cross-sections of all street types;
3.  Emergency vehicle access areas;
4.  Parking areas and total numbers of spaces;
5.  Proposed trails or other pedestrian infrastructure; and
6.  Proposed links to off-site trails and public access areas.

Moab, Utah, Mun. Code § 17.65.100(C).

other applicable ordinances." *Id.* § 17.65.030(A)(1). The other review criteria include such considerations as the preservation of open space, pedestrian access, and the preservation of natural and historic features, *see id.* § 17.65.030(A)(2)–(7), and whether the MPD "advances the purposes of this chapter as stated in the objectives and characteristics," *id.* § 17.65.030(A)(8).

## II. Section 17.65.030(A)(1) Does Not Apply to Reviews of Preliminary MPD Plans

¶17    In its ruling dismissing Moab Local Green's claims, the district court observed,

> It is important to note at the outset that the challenged decision was not a final approval of a subdivision. Rather, it is a preliminary approval of a Master Planned Development ("MPD") within the City of Moab's Sensitive Area Resort Zone. A review of LB Moab's Final MPD Plan lies in the future.

We agree with the district court's implicit recognition that, generally, preliminary approvals have a greater degree of flexibility than final approvals. It would seem that one purpose of the preliminary approval process is to identify issues that need to be corrected before final approval, which would imply that preliminary approval may be granted conditionally subject to identified flaws being corrected prior to final approval.[8]

¶18    Nevertheless, we see no reason why Moab City could not limit that flexibility by ordinance if it chose to do so. Moab Local Green argues that Moab City did just that in enacting municipal code section 17.65.030, and particularly section 17.65.030(A)(1). *See generally* Moab, Utah, Mun. Code § 17.65.030(A)(1) ("In reviewing a master planned development, the land use authority shall determine whether . . . [t]he site plan satisfies the requirements pursuant to this and all other applicable ordinances."). We disagree, however, with Moab Local Green's interpretation of that ordinance.

¶19    Moab Local Green is correct in stating that the Board must actually do those things that it is mandated to do under the municipal code. *See Springville Citizens v. City of Springville*, 1999 UT 25, ¶ 30, 979 P.2d 332 ("The City was not entitled to disregard its mandatory ordinances."). "While substantial compliance with matters in which a municipality has discretion may indeed suffice, it does not when the municipality itself has legislatively removed any such discretion." *Id.* ¶ 29. Thus, we agree with Moab

---

8. Indeed, the preliminary MPD plan approval in this case was subject to conditions.

Local Green that the Board could not approve LB Moab's preliminary MPD plan without performing those acts that it was required to do by the municipal code, as indicated by the word "shall." *See* Moab, Utah, Mun. Code § 1.04.020(24) ("'Shall' is mandatory and 'may' is permissive.").

¶20    Although section 17.65.030(A)(1) uses the mandatory language "shall," it applies only to "site plan[s]," not preliminary MPD plans. *See id.* § 17.65.030(A)(1). The municipal code expressly defines a site plan as a component of a *final* MPD plan, *see id.* § 17.65.110(A), subject to review as a part of the final MPD plan or, for phased projects, independently, *see id.* § 17.65.080. We do not necessarily disagree with Moab Local Green that the general review requirements of section 17.65.030 apply to all MPD plan reviews, including preliminary reviews. However, by its own terms, section 17.65.030(A)(1) applies only when the Board is reviewing a "site plan," which the municipal code identifies as a component only of the final MPD review process.[9]

¶21    Thus, while section 17.65.030(A)(1) does contain mandatory language that the Board is obligated to follow, it applies only to site plans, which are not a part of the preliminary MPD plan or review process. We therefore conclude that the Board did not violate section 17.65.030(A)(1) when it failed to ensure that LB Moab's preliminary MPD plan contained all of the elements required under section 17.65.100(A)–(N).[10]

III.  Section 17.65.100(A)–(N) Governs Applications, Not Plans

¶22    Although we have determined that municipal code section 17.65.030(A)(1) does not apply to the preliminary MPD plan review process, that does not completely resolve

---

9. We recognize that the term "site plan" could be read as a generic reference to all types of plans involving the site and that the ordinance governing preliminary MPD plans does use the term, once, in that generic sense. *See* Moab, Utah, Mun. Code § 17.65.100 ("Components of [a preliminary MPD plan] may be combined into one or more site plans or reports . . . ."). However, every other reference to site plans in the MPD ordinances appears to refer to the specific "site plan" that must be included in the final MPD plan.

10. For purposes of this appeal, we have simply assumed that section 17.65.030(A)(1)'s requirement that the Board "determine whether" an MPD plan complies with all applicable ordinances is synonymous with a requirement that the Board "ensure that" the plan so complies.

Moab Local Green's assertion of illegality. If section 17.65.100 sets its own mandatory requirements for preliminary MPD plans, then the Board was required to follow those requirements regardless of the inapplicability of section 17.65.030(A)(1). *See Springville Citizens*, 1999 UT 25, ¶ 30 ("Municipal zoning authorities are bound by the terms and standards of applicable zoning ordinances and are not at liberty to make land use decisions in derogation thereof.").

¶23    However, section 17.65.100 draws a clear distinction between a preliminary development *plan* and a preliminary development plan *application*. The only mandatory requirements for a preliminary MPD plan are that it "shall identify the final proposed location of all lots, tracts, parcels, open space, rights-of-way, building envelopes, and other significant features." Moab, Utah, Mun. Code § 17.65.100. Moab Local Green does not argue that LB Moab's preliminary MPD plan fails to include any of these elements. Rather, Moab Local Green asserts failures to comply with the requirements enumerated in section 17.65.100(A)–(N), which are elements of a "complete preliminary development plan application." *See id.*

¶24    This distinction has dispositive implications for Moab Local Green's illegality argument. Because the requirements of section 17.65.100(A)–(N) govern only "application[s]" for preliminary MPD plan review, they seem to be aimed squarely at the developers who draft MPD plan applications and not at the reviewing authority. The Board—or more accurately, the Planning Commission or City Council, *see id.* § 17.65.080(A) (incorporated chart)—likely has the discretion to refuse to even consider a preliminary MPD application until the application fully complies with section 17.65.100(A)–(N). Similarly, the Board is under no obligation to approve an application merely because it is complete. But it does not follow that the Board is precluded from considering an incomplete application if the Board is of the opinion that the preliminary plan can be adequately reviewed based on the contents of a particular incomplete application.[11]

¶25    This is also not the first time that this court has been presented with a challenge to a plan's approval based on allegations that the proponent's application for review

---

11. We are not suggesting that the Board has unlimited discretion to consider and approve incomplete applications regardless of their content. Rather, the Board likely has the discretion to accept incomplete applications so long as the contents allow the Board to adequately apply the review requirements imposed by municipal code section 17.65.030. *See* Moab, Utah, Mun. Code § 17.65.030.

was incomplete.  In *Sierra Club v. Department of Environmental Quality*, 857 P.2d 982 (Utah Ct. App. 1993), the Sierra Club challenged the approval of an operation plan under Utah's Solid and Hazardous Waste Act on the grounds that the application for review failed to include required "evidence that emergency response plans had been coordinated with local and regional emergency response personnel."  *See id.* at 983–84.  We made the following observations about the review application process:

> A determination by the Board that an application is "complete" . . . is an internal procedural decision preceding any public involvement in the permit process.  Only the applicant receives notice of the completeness determination.  The "completeness" label merely shows that the applicant has addressed any notices of deficiency and the Executive Secretary can now prepare a draft plan approval for public review and comment.  The determination of completeness is not intended to protect any interests of Sierra Club or any interests of the general public.

*Id.* at 987.  Although we made these observations in the context of the approval at issue in *Sierra Club*, we see nothing in the Moab Municipal Code's MPD review process that is facially inconsistent with our description of the application process.

¶26    In light of the municipal code's requirements for preliminary MPD plans and applications and our treatment of the incomplete application challenge in *Sierra Club*, Moab Local Green has not convinced us of any error by either the Board or the district court.  The requirements that Moab Local Green seeks to enforce apply to applications for preliminary MPD plan review, not to preliminary MPD plans themselves.  Although municipal code section 17.65.100 does establish some minimal requirements for preliminary MPD plans, Moab Local Green has not alleged that those requirements have not been met in this case.


CONCLUSION

¶27    Although we assume that Moab Local Green has identified at least some aspects in which LB Moab's preliminary MPD plan and application for review failed to comply with all of the required elements of Moab Municipal Code section 17.65.100(A)–(N), we see no illegality in the Board's ultimate approval of LB Moab's plan.  Moab Local Green identifies no aspect in which LB Moab's preliminary MPD plan itself—as opposed to LB Moab's application for plan review—fails to satisfy any requirement of the municipal

code.  And Moab Local Green has not raised any argument that the Board lacks the authority to consider preliminary MPD plan review applications merely because they are not complete under section 17.65.100(A)–(N).  For all of these reasons, we decline to disturb the Board's decision dismissing Moab Local Green's claims that the approval of LB Moab's preliminary MPD plan was illegal.[12]

_____
William A. Thorne Jr., Judge

-----

¶28    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
James Z. Davis, Judge

_____

12.  We note that, even had we agreed with Moab Local Green's illegality argument, it would only have entitled Moab Local Green to a remand to the district court, where it faced the "difficult—if not impossible—burden" of demonstrating prejudice from the Board's decision.  *See generally Gardner v. Perry City*, 2000 UT App 1, ¶ 20 n.7, 994 P.2d 811.  Prior to obtaining any judicial relief, Moab Local Green would have been required to "establish that [it was] prejudiced by the City's noncompliance with its ordinances or, in other words, how, if at all, the City's decision would have been different and what relief, if any, they are entitled to as a result."  *See Springville Citizens v. City of Springville*, 1999 UT 25, ¶ 31, 979 P.2d 332.  In the context of a preliminary MPD review, such a showing may be further complicated by a pending final MPD review process.