**2016 UT App 106**

## THE UTAH COURT OF APPEALS

DAVID OLSEN, ROSEMARY OLSEN, AND RICK MARGOLIS,
Appellants,
*v.*
PARK CITY MUNICIPAL CORPORATION AND
VALLEY OF LOVE LLC,
Appellees.

Memorandum Decision
No. 20141193-CA
Filed May 19, 2016

Third District Court, Silver Summit Department
The Honorable Todd M. Shaughnessy
No. 110500786

Bruce R. Baird, Attorney for Appellants

Mark Harrington and Polly Samuels McLean,
Attorneys for Appellee Park City
Municipal Corporation

Eric P. Lee and Justin J. Keys, Attorneys for Appellee
Valley of Love LLC

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and STEPHEN L.
ROTH concurred.[1]

BENCH, Senior Judge:

¶1     David Olsen, Rosemary Olsen, and Rick Margolis
(collectively, Appellants) challenge the district court's grant of
summary judgment in favor of Park City Municipal Corporation

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

(Park City) and Valley of Love LLC (collectively, Appellees). We affirm.

¶2     Valley of Love owns three adjacent parcels of real property on Empire Avenue in Park City, Utah. The two smaller parcels, consisting of 2,221 and 1,676 square feet, border Empire Avenue. The large parcel, consisting of 8,985 square feet, is landlocked behind the two small parcels. The parcels are located in a recreation commercial zone, which allows developments to have a maximum density ratio of 1.0.[2] *See* Park City, Utah, Land Mgmt. Code § 15-2.16-3(B), http://www.parkcity.org/home/showdocument?id=220 [https://perma.cc/55MV-2R65]. However, setback requirements made the two smaller parcels unbuildable on their own.

¶3     In 2009, Valley of Love sought approval of a proposed ordinance to combine the three parcels, which had not yet been subdivided[3] for development, into a single platted lot of record.

---

2. A building has a density ratio of 1.0 if the total square footage of the building is equal to the total square footage of the lot.

3. Although the word "subdivision" most commonly refers to a division rather than an aggregation of lots, *see Subdivision*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/subdivision [https://perma.cc/B9CH-H3RP], the Park City Land Management Code defines a subdivision as "[a]ny land, vacant or improved, which is divided or proposed to be divided *or combined* into one (1) or more Lots, Parcels, Site, Units, plots, or interests for the purpose of offer, sale, lease or Development," Park City, Utah, Land Mgmt. Code § 15-15-1.266, http://www.parkcity.org/home/showdocument?id=198 [https://perma.cc/D8ZJ-GG7Q] (emphasis added). Thus, for purposes of our discussion, we use the word "subdivision" and its variants to refer to the combination of the three parcels in this case into a single lot.

Park City approved Valley of Love's proposal and enacted Ordinance 10-08, subdividing the three parcels into a single lot.[4] Valley of Love then sought and obtained approval of a conditional use permit allowing it to build a multi-unit dwelling on the lot.[5]

¶4    Appellants, who own property near the parcels, challenged Ordinance 10-08 in district court, asserting that Park City violated various provisions of the Park City Land Management Code (LMC) by adopting the ordinance. The

---

4. Appellants represent Ordinance 10-08 as a lot-line adjustment, but because the parcels had never been subdivided into lots prior to the enactment of Ordinance 10-08, Park City's action is more properly termed a subdivision. *Compare* Park City, Utah, Land Mgmt. Code § 15-7.1-3(D), http://www.parkcity.org/home/showdocument?id=208 [https://perma.cc/YT7C-E8MX] (indicating that a lot-line adjustment involves "[t]he relocation of the Property boundary line between two adjoining Lots"), *with id.* § 15-15-1.266, http://www.parkcity.org/home/showdocument?id=198 [https://perma.cc/D8ZJ-GG7Q] (defining a subdivision as "[a]ny land, vacant or improved, which is divided or proposed to be divided *or combined* into one (1) or more Lots, Parcels, Site, Units, plots, or interests for the purpose of offer, sale, lease or Development" (emphasis added)). *See generally id.* § 15-15-1.154 (defining a lot as "[a] unit of land described in a recorded Subdivision Plat").

5. Appellants challenged Park City's approval of Valley of Love's conditional use permit in a separate case. The district court granted summary judgment in favor of Appellees in that case as well, but Appellants did not appeal. Therefore, to the extent that Appellants' arguments appear to challenge Park City's approval of the conditional use permit, we do not address them.

parties filed cross-motions for summary judgment. The district court determined that Ordinance 10-08 did not violate the LMC and granted Appellees' motion for summary judgment.

¶5 Appellants assert that the district court erred in concluding that Park City's adoption of Ordinance 10-08 did not conflict with the LMC, and they therefore request that we reverse the district court's summary judgment ruling. We review the district court's ruling on summary judgment for correctness. *See Springville Citizens for a Better Cmty. v. City of Springville*, 1999 UT 25, ¶ 22, 979 P.2d 332.

¶6 "A municipality's land use decisions are entitled to a great deal of deference." *Id.* Thus, we reverse such decisions only if they are "arbitrary, capricious, or illegal." *Id.* ¶ 23. Appellants argue that Ordinance 10-08 violates LMC sections 15-7-5 and 15-7-2 and the Park City Planning Department's "General Plan" and that it is therefore illegal.[6]

¶7 Appellants first argue that Ordinance 10-08 violates section 15-7-5(B)(1), which provides that the LMC's regulations regarding subdivisions

> are not intended to interfere with, abrogate, or annul any other ordinance, rule or regulation, statute, or other provision of law. Where any provision of these regulations imposes restriction different from those imposed by any other provision of these regulations or any other ordinance, rule or regulation, or other provision of

---

6. Appellees argue that ordinances cannot be rendered illegal based on conflicts with general purpose statements such as those contained in section 15-7-2 and the General Plan. For purposes of our analysis, we assume, without deciding, that they can.

law, whichever provisions are more restrictive or impose higher standards shall control.

Park City, Utah, Land Mgmt. Code § 15-7-5(B)(1), http://www. parkcity.org/home/showdocument?id=207 [https://perma.cc/ XQ5D-E9XM]. Appellants argue that Ordinance 10-08 annulled the effects of the building ratio and setback requirements applicable in the recreation commercial zone (the lot requirements), *see id.* § 15-2.16-3, http://www.parkcity.org/home/ showdocument?id=220 [https://perma.cc/55MV-2R65], because it subdivided the parcels into a single lot and thereby increased their total buildable square footage, which the setback requirements previously limited.

¶8   Appellants argue that because setback requirements would have made the front two parcels unbuildable had they been subdivided into individual lots, the lot requirements had the effect of forever limiting the total buildable square footage on the three parcels to the amount allowed on the large parcel— 8,985 square feet. They assert that the total could not be altered even if the parcels were ultimately subdivided into a single lot. Thus, because Ordinance 10-08 effectively increased the buildable square footage of the parcels to 12,882 square feet—an amount equal to the total square footage of the parcels— Appellants argue that it conflicted with the lot requirements as applicable prior to the subdivision and thereby violated section 15-7-5(B)(1).

¶9   Appellants refer us to no authority suggesting that the buildable square footage of property must forever be defined by what would have been allowed on an individual parcel of property if it were subdivided as an individual lot. The setback requirements only indirectly affect the buildable square footage on a lot due to the impossibility of building a structure on a narrow lot while complying with the setback requirements; those requirements do not actually alter the density allowance

for the lot. Furthermore, the lot requirements apply to lots, *id.* § 15-2.16-3, and the three parcels were not lots as defined by the LMC until they were subdivided, *id.* § 15-15-1.154, http://www.parkcity.org/home/showdocument?id=198 [https://perma.cc/D8ZJ-GG7Q] (defining a lot as "[a] unit of land described in a recorded Subdivision Plat"). Indeed, no structure of any kind could have been built on the parcels until they were subdivided. *Id.* § 15-1-9, http://www.parkcity.org/home/showdocument?id=7419 [https://perma.cc/84MZ-FYBS] (instructing the Planning Department, in reviewing an application for a building permit, to "determine whether the proposal . . . respects Lot Lines of a legally subdivided Lot"). Thus, the lot requirements did not come into operation with respect to the parcels until after they were subdivided into a lot, and there is no possibility that Ordinance 10-08 could have "interfere[d] with, abrogate[d], or annul[led]" the lot requirements for the recreation commercial zone. *See id.* § 15-7-5(B)(1), http://www.parkcity.org/home/showdocument?id=207 [https://perma.cc/XQ5D-E9XM].

¶10 Appellants next assert that Ordinance 10-08 violates two of the stated purposes of the subdivision provisions of the LMC, namely, "to prevent overcrowding of the land and undue congestion of population" and "[t]o provide the most beneficial relationship between the Uses of land and Buildings and the circulation of traffic, throughout the municipality, having particular regard to the avoidance of congestion in the Streets and highways." *Id.* § 15-7-2(C), (G). Appellants argue that the increase in the potential buildable square footage of the three parcels created by Ordinance 10-08 violated the purposes of the LMC to prevent overcrowding and allow circulation of traffic.

¶11 We agree with the district court that Ordinance 10-08 is consistent with the purposes of the LMC. The fact that the setback requirements might have resulted in an overall lower density if the parcels had been subdivided differently does not change the fact that the LMC allows for a 1.0 density ratio. Thus,

in enacting the LMC, Park City had previously determined that 1.0 was an appropriate density for the area. Further, the fact that zoning regulations permitted a structure of up to 12,882 square feet to be built on the lot does not mean that such a building would necessarily be built or that it would result in overcrowding or traffic congestion. Had Valley of Love employed one of the smaller allowed uses on the lot, such as a single family home or a duplex, the overcrowding and congestion Appellants are concerned with could not have materialized. *See id.* § 15-2.16-2(A), http://www.parkcity.org/ home/showdocument?id=220 [https://perma.cc/55MV-2R65]. In order to build the type of multi-unit dwelling that Valley of Love ultimately sought to build, it had to obtain a conditional use permit. *Id.* § 15-1-10, http://www.parkcity.org/home/ showdocument?id=7419 [https://perma.cc/84MZ-FYBS]; *id.* § 15-2.16-2(B). If Valley of Love's multi-unit dwelling, once proposed, posed a potential overcrowding or traffic problem, then that could be addressed—and indeed, was addressed—in the process of approving the conditional use permit. Because Appellants have not appealed the district court's summary judgment ruling regarding the conditional use permit, we do not address this argument further. *See supra* note 5.

¶12 Finally, Appellants argue that Ordinance 10-08 conflicts with the "General Plan"—Park City's "long range policy plan" intended to "guide future [LMC] and zoning decisions." *See* [1 Goals, Objectives, Strategies] Park City, Utah, General Plan 8 (2014), http://www.parkcity.org/home/showdocument?id=12385 [https://perma.cc/HB3N-RZT8]. Specifically, the General Plan in place at the time Ordinance 10-08 was approved provided,

> The area at the base of the Park City Mountain Resort is currently zoned Recreation Commercial. While development associated with the ski area itself is (and will be) very dense, the [Recreation Commercial] area to the east has served as a

transition zone to lower densities. The entire area is currently zoned Recreation Commercial. To better address future development in the area, the following objectives are recommended:

Examine and make modifications to the Recreation Commercial zone to ensure that new structures to the east of Empire Avenue provide skier bed base, while allowing for a transition of scale to Park Avenue. Eliminate [the] option for commercial uses and emphasize that commercial uses occur at the ski resort base only.

Specify density requirements for the [recreation commercial] zone that more closely match what can actually be built on the parcels.

Refine design guidelines for the area to provide the necessary transition between the historic area and the resort area.

Appellants assert that because the subdivided lot is on the east side of Empire Avenue, Ordinance 10-08 violated the General Plan by granting Valley of Love "the right to develop the property literally to the maximum scale allowed in the [recreation commercial] zone." (Emphasis omitted.) Based on the General Plan, they argue, structures built on property to the east of Empire Avenue must be smaller than those allowed to the west of Empire Avenue in order to accomplish "the transitioning in scale to Park Avenue." (Emphasis omitted.)

¶13    Accepting, for purposes of our analysis, that Appellants' interpretation of the General Plan is correct and that an ordinance violating the General Plan would be illegal, we are not convinced that Ordinance 10-08 violates the General Plan. First, Ordinance 10-08 does not say anything about the buildable square footage of the lot; it merely creates the lot and concludes that it is "compatible with the zone and other developments in the area." It is the LMC's lot requirements that ultimately define

the buildable square footage of the lot, based on density allowances for the zone. Second, to the extent that Appellants argue that permitting Valley of Love to build its proposed multi-unit dwelling on the lot violated the General Plan, that argument is not before us, as it concerns the grant of the conditional use permit, an issue that was not appealed.

¶14     Because we determine that Park City did not violate any provision of the LMC or the General Plan in enacting Ordinance 10-08, we conclude that the ordinance is not illegal. Accordingly, we affirm the district court's grant of summary judgment in favor of Appellees.

———————