*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 21**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

JEANETTE POTTER, ET AL.,[1]
*Appellants,*

*v.*

SOUTH SALT LAKE CITY,

*Appellee.*

No. 20150931
Filed June 5, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 140908636

Attorneys:

Craig S. Cook, Salt Lake City, for appellants

Jody K. Burnett, Robert C. Keller, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

---

[1] Other appellants are Darrel Roberts, Barbara Mackay, Carl
Webster, June Jackson, William Eresuma, Heather Bernales, and
Eugene Baierschmidt.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    Jeanette Potter and others filed suit challenging a decision of the South Salt Lake City Council to close a portion of Truman and Burton Avenues. The district court dismissed Potter's claims on summary judgment. We affirm. In so doing we conclude that the petition to vacate was valid under Utah Code section 10-9a-609.5, that Potter has not identified any prejudice resulting from any alleged deficiency in the petition, and that notice of the city council meetings was sufficient under Utah Code section 10-9a-208.

¶2    In holding that Potter failed to prove prejudice we revise and clarify the standard set forth in *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, 979 P.2d 332. We hold that a party alleging error by a land use authority is no longer required to show that the "decision would have been different" but for the error. *Id.* ¶ 31. Instead we conclude that a party can establish prejudice by showing a *reasonable likelihood* that the error changed the land use authority's decision.

I

¶3    In 2008 the South Salt Lake City Council voted to close a portion of Truman and Burton Avenues in response to a petition by RIM Enterprises. RIM owned a Chrysler dealership on State Street that occupied three separate blocks divided only by Truman and Burton Avenues. And the car dealership sought to expand its operation by consolidating the three properties, thereby complying with Chrysler Corporation's acreage requirement.

¶4    The city council conditioned its decision to vacate both streets on the dealership's buying the four parcels on Truman Avenue that abutted a portion of Truman that RIM Enterprises wanted vacated. A plat map reflecting this decision was placed with the city recorder in 2008—to be recorded only upon a showing that the dealership had met the condition. The dealership never purchased the parcels, however, so the two streets were never vacated.

¶5    Years passed and RIM Enterprises sold the dealership to Salt Lake Valley Chrysler Dodge in 2014. In May 2014 the dealership filed another petition with the South Salt Lake City Council. This new petition sought to vacate only the portion of the streets adjacent to land the dealership already owned, thus avoiding the need to purchase the four properties on Truman Avenue. After notice and a public hearing the city council denied the petition.

¶6 In October 2014 the dealership submitted a revised petition to vacate. The revised petition included mitigation measures aimed at addressing the concerns residents raised during the earlier public hearing. The city sent notices out to residents in the area apprising them of the petition and the public meeting to be held on December 3, 2014. The city also placed large signs with similar language along Truman and Burton Avenues, as required by Utah Code section 10-9a-208(2)(c).

¶7 Residents overwhelmingly opposed the action at the December 3 meeting. Only the dealership's attorney spoke in favor during the public comment portion. After taking public comment the council elected to table the discussion until the following meeting, placing the item on the unfinished-business agenda for December 10, 2014.

¶8 When the city council turned to the issue at its December 10 meeting, the city attorney addressed the council regarding his legal opinions. He noted that "the decision has already been made to close the streets"—referring to the council's conditional approval of the 2008 petition—"so the real issue here" is whether "the City [is] happy with the additional mitigation measures." Following the city attorney's presentation, several residents, including Potter's current legal counsel, addressed the city council and took issue with the city attorney's comments. One resident remarked, "If the decision has already been made and it doesn't matter, then why are we here?"

¶9 The city attorney later addressed the council again and explained that the conditions in the 2008 ordinance did not contain a sunset clause. He noted that if the city council rejected the dealership's 2014 petition "then the previous action remains in place, and at whatever time the conditions of the previous action are met, the streets will be closed but they'll be closed without the mitigation measures that have arisen out of this most recent activity."

¶10 These comments seemed to surprise at least some of the members of the city council. One councilwoman expressed frustration with the process and with the attorney's legal advice. She noted the lack of understanding among the councilmembers that the closure "is happening in one form or another" because the 2008 ordinance remained valid and could be invoked whenever the dealership met the conditions.

¶11 Following some debate, the South Salt Lake City Council voted five to two to vacate a portion of Truman and Burton Avenues. The council found, as required by statute, that "good cause

exist[ed] for the vacation" and that "neither the public interest nor any person w[ould] be materially injured by the vacation." *See* UTAH CODE § 10-9a-609.5(3).

¶12 Potter sought review of the action in district court. She asked the district court to set aside the decision under Utah Code section 10-9a-801 on the grounds that the decision was illegal.

¶13 Potter specified two principal grounds for challenging the city council's decision. First, she asserted that the council's decision was illegal because the dealership's petition to vacate failed to list the name and address of each owner whose property was "adjacent to the public street" being vacated, as required by Utah Code section 10-9a-609.5(1)(a)(i). Second, she challenged the sufficiency of the notice of the city council meeting in which the streets in question were vacated. Here Potter noted the city attorney's comments in the December 10 meeting—comments indicating the attorney's view that the council had already decided to close the streets under the first petition to vacate, and that the "real issue" was whether to endorse the "additional mitigation measures" in the revised petition. And Potter claimed that those comments deprived the public of a meaningful opportunity to be heard on the proposed action.

¶14 Both parties filed motions for summary judgment. The district court granted the city's motion. It held first that the dealership's petition satisfied the requirements of Utah Code section 10-9a-609.5(1)(a). In so doing the court interpreted the requirement of naming each owner whose property was "adjacent to the public street" being vacated to apply only to owners of property abutting the *portion of the street* being vacated. And because the dealership owned all the property abutting the portion of the streets being vacated, the court concluded that the dealership was not required to name any property owners in its petition.

¶15 The district court also upheld the validity of the notice of the city council meeting. It concluded that the city attorney's "comments did not render the proceedings defective or illegal in any way." And it held that no further notice was required despite the city attorney's apparent reframing of the issue.

¶16  Potter filed this appeal. We review the district court's decision on summary judgment *de novo*.[2] *See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

II

¶17  Potter raises two sets of issues on appeal. She challenges the sufficiency of the dealership's petition to vacate under Utah Code section 10-9a-609.5(1)(a). And she also asserts that the public was not given adequate notice of the nature of the city council's meeting. We disagree and affirm.

A

¶18  Potter makes two sets of arguments in challenging the sufficiency of the petition to vacate. She first asserts that the petition was defective because it failed to include the names and addresses of all property owners whose land was "adjacent to the public street" being vacated, as required by Utah Code section 10-9a-609.5(1)(a)(i). And she also insists that this defect is sufficient to sustain reversal regardless of the fact that it had no effect on the city council's decision. We reject both sets of arguments.

1

¶19  Utah Code section 10-9a-609.5(1) requires a party seeking "to vacate some or all of a public street" to file a petition that includes "(a) the name and address of each owner of record of land that is: (i) adjacent to the public street, right-of-way, or easement; or (ii) accessed exclusively by or within 300 feet of the public street, right-

---

[2] Potter appears to assume that our review is of *the city council's action* (not the district court's). That is perhaps understandable in light of potentially confusing language in *Fox v. Park City*, where we said that "we act as if we [a]re reviewing [a] land use authority's decision directly" when we consider an appeal from a district court's decision reviewing "an order of a local land use authority." 2008 UT 85, ¶ 11, 200 P.3d 182. But the "as if" formulation is just a reflection of the *de novo* nature of our review. We cannot ignore the district court's decision. That is the decision before us on appeal. *See Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, ¶ 12, --- P.3d ---. And the appellant bears the burden of establishing a reversible error in the district court's decision.

of-way, or easement." The threshold question is what it means to be "adjacent to the public street." There is some ambiguity in that clause. It could be a reference to the portion of the street being vacated—to section 609.5(1)'s introductory clause, which refers to "some or all of [the] public street" sought to be vacated. UTAH CODE § 10-9a-609.5(1). Or, alternatively, the referenced "public street" could be taken literally; it could mean the entire length of the street that bears that name—here, Truman and Burton Avenues from start to finish (where they begin at State Street until they end many blocks to the east).

¶20 Either of these readings is semantically possible if we view the term "public street" in isolation—divorced from its statutory context. But we must consider the statutory context. *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12 n.5, 248 P.3d 465 ("[T]he meaning of statutory language, plain or not, depends on context." (alteration in original) (citation omitted)). And the context strongly favors the former reading over the latter.

¶21 This statute prescribes the required elements of a petition seeking to vacate "some or all of a public street." UTAH CODE § 10-9a-609.5(1). And in context, the use of the phrase "public street" is easily understood as a reference back to the subject of the petition—to the portion of the street ("some or all" of it) sought to be vacated. The alternative reading (that "public street" means the entirety of the street from beginning to end), moreover, seems difficult to reconcile with the apparent purpose of the statute (another element of context). A public street may extend many blocks—or even many miles—from start to finish. And it is hard to think of a reason why the legislature would want to require a petition to list owners whose property is situated many miles away from the portion of the street being vacated. With this in mind, it is more natural to read the term "public street" as a reference back to the subject of the petition—to the portion of the street being vacated.

¶22 Potter acknowledges the difficulty of the more expansive reading of "public street." And she accordingly offers a third possibility. In Potter's view the referenced "public street" could be viewed as ending at the next cross street—for Truman and Burton Avenues, at 200 East. We reject that reading, however, as we find no basis for it in the statutory text. The reference to "public street" could mean all of Truman or Burton Avenue. Or, in the context of this statute, it could mean the portions of those streets being vacated. There is no natural reading of "public street," however, that extends

beyond the portion being vacated and arbitrarily ends at the next cross street.

¶23 We reject Potter's challenge to the car dealership's petition on this basis. We conclude that the petition complied with Utah Code section 10-9a-609.5(1)(a) because there were no other owners of property adjacent to the portions of the public streets being vacated. And we affirm the district court's decision on summary judgment on this basis.

2

¶24 We have long held that parties challenging a land use decision "must establish that they were prejudiced by the City's noncompliance with its ordinances." *Springville Citizens for a Better Cmty. v. City of Springville*, 1999 UT 25, ¶ 31, 979 P.2d 332. Here there is an admitted lack of prejudice—Potter concedes that the alleged defect in the car dealership's petition had no effect on the city council's decision. And that is an alternative basis for affirming the district court's decision on summary judgment.

¶25 Potter seeks to avoid this result by asking us to adopt a prejudice standard that differs from the one we prescribed in *Springville Citizens*. Her argument proceeds in two steps.

¶26 Potter first asks us to revise our formulation of the standard of prejudice in *Springville Citizens*—a standard requiring a party challenging a land use decision to establish that "the City's decision would have been different" but for its noncompliance with its ordinances or governing statutes. *Id.* In support of this argument, Potter cites our court of appeals' observation that this formulation "imposes a difficult—if not impossible—burden on a citizen who seeks to challenge the procedural legality of a city's land use decision." *Gardner v. Perry City*, 2000 UT App 1, ¶ 20 n.7, 994 P.2d 811. And Potter asks us to reformulate the prejudice standard in a manner that will avoid the difficulties of the *Springville Citizens* regime.

¶27 Potter's second point is more comprehensive. Citing eminent domain cases, Potter asserts that there should be no requirement of proof of prejudice in a case challenging a decision to vacate a public street. The point here is that this is no ordinary land use decision. In Potter's view the decision to vacate a street is more like a city's decision to condemn land. And because in Potter's view there is no requirement of proof of prejudice in an action challenging an

eminent domain proceeding,[3] Potter asks us to eliminate the requirement of proof of prejudice in a case like this one.

¶28   We find no basis for this latter invitation. We can assume for the sake of argument that prejudice is not an element of an action challenging an exercise of the eminent domain power. But Potter is not challenging an exercise of the eminent domain power. Eminent domain involves the exercise of government power in taking *private* property rights. And Potter is challenging a decision to revoke *public* access and control of a street—the petition at issue here is one seeking "to vacate some or all of a *public* street." UTAH CODE § 10-9a-609.5(1) (emphasis added).  So the city's action in vacating a street has no effect on private easements over the roadway—it "may not be construed to impair . . . any right-of-way or easement of any lot owner."[4] *Id.* § 10-9a-609.5(5)(b). For that reason this is not a challenge to the exercise of the eminent domain power. It is a challenge to a land use decision. And the general principles of judicial review apply.

¶29   A core element of these principles is the requirement of proof of prejudice. As a general rule we do not overturn a decision of a lower court or administrative body upon a mere showing of error; proof of prejudice is typically required. *See* UTAH R. CIV. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *State v. Goins*, 2017 UT 61, ¶ 48, --- P.3d --- (noting,

---

[3] Potter cites the following cases in support of her argument: *Salt Lake City Corp. v. Evans Dev. Grp., LLC*, 2016 UT 15, 369 P.3d 1263; *Marion Energy, Inc. v. KFJ Ranch, P'ship*, 2011 UT 50, ¶ 16, 267 P.3d 863; and *Town of Tremonton v. Johnson*, 164 P. 190, 191 (Utah 1917). We yield no opinion on the premise of Potter's argument. We see no reason to reach the question whether prejudice is required in an eminent domain setting because we conclude that this case does not sound in eminent domain.

[4] This statutory scheme only affects public rights, so we do not decide the question whether these residents have a private easement under *Boskovich v. Midvale City Corp.*, 243 P.2d 435 (Utah 1952), that could warrant a separate proceeding for just compensation.

in the context of a criminal case, that an error warrants reversal only if it results in prejudice).

¶30 This requirement has long been extended to judicial review of land use decisions. *See, e.g.*, *Springville Citizens*, 1999 UT 25, ¶ 31 (holding that a party challenging a land use decision must establish prejudice). And this application is likewise reflected in settled case law in other jurisdictions. *See, e.g.*, *In re Eastview at Middlebury, Inc.*, 992 A.2d 1014, 1022–23 (Vt. 2009) ("It is a well established rule that the party who alleges error has the burden of showing that he has been prejudiced thereby." (citation omitted)); *Quality Rock Prods., Inc. v. Thurston Cty.*, 108 P.3d 805, 813 (Wash. Ct. App. 2005) (noting that "a defect in the caption of a land use petition's summons" did not warrant reversal "absent demonstrated prejudice").

¶31 For these reasons we decline the request that we abandon the element of prejudice in a case like this one. But we do acknowledge a threshold concern about the viability of the precise formulation of the standard of proof of prejudice in *Springville Citizens*. A requirement of proof that a city's land use decision "would have been different," *Springville Citizens*, 1999 UT 25, ¶ 31, is a high bar. On reflection, in fact, we think this comes close to an insurmountable barrier. *See Gardner*, 2000 UT App 1, ¶ 20 n.7 (suggesting that the standard may be "impossible" to meet). And that is untenable.

¶32 This concern has led us to reconsider the standard in *Springville Citizens*. In response to the briefing in this case we have reevaluated the *Springville Citizens* standard. And we have concluded that the time has come to revise the standard set forth in *Springville Citizens*.[5]

¶33 Proof of prejudice is required. But the required standard of prejudice should not be insurmountable. With that in mind, we hold that a party challenging a land use decision is not required to prove

---

[5] We do not reach this conclusion lightly. We afford a measure of deference to *Springville Citizens* under our doctrine of *stare decisis*. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553. But we find that the *Springville Citizens* formulation is ripe for reconsideration because it is unworkable in practice and incapable of being applied in accordance with its literal terms. *See id.* ¶ 40 (explaining that precedent is susceptible to being overruled when it's unworkable — or incapable of consistent application).

that the city's decision "would have been different" absent the violation of city law. *See* S*ierra Club v. D.R. Horton-Schuler Homes, LLC*, 364 P.3d 213, 233 (Haw. 2015) (harmlessness inquiry "'does not require proof that the errors necessarily changed the result of the proceeding below'" (citation omitted)). Instead, it is enough for the challenging party to show that there is a reasonable likelihood that the legal defect in the city's process changed the outcome of the proceeding.

¶34 We affirm, however, on the ground that Potter cannot establish prejudice even under this more permissive standard. Potter herself concedes that the alleged defects in the car dealership's petition had no effect on the outcome of the city council's decision. And the city was entitled to summary judgment because there is no reasonable likelihood that the alleged defect in the petition had any effect on the outcome of the proceedings.

B

¶35 Potter also challenges the sufficiency of the public notice of the city council meeting in question. The governing statute requires a "public hearing" for "any proposal to vacate some or all of a public street." UTAH CODE § 10-9a-208(1)(a). It also requires the city to "give notice of the date, place, and time of the hearing." *Id.* § 10-9a-208(1)(b).

¶36 These requirements were fulfilled in advance of the city council meeting in question. The city gave notice of a hearing in which it planned to address the car dealership's petition to vacate portions of Truman and Burton Avenue. And that petition was in fact the subject of the city council's deliberations and decision.

¶37 Potter concedes these points. But she insists that the sufficiency of the city's notice was obviated by comments made by the city attorney during the hearing. In those comments the city attorney expressed his view that the question presented was not *whether* to vacate the streets in question but *how*. The attorney opined that the council's approval of the prior petition was still on the table, and thus that the question for the council was whether to accept the conditions in the new petition or revert to the decision approving the old one. And Potter contends that these comments somehow obviated the sufficiency of the city's notice.

¶38 Potter's argument goes to the subject matter of the noticed hearing. Because the city attorney reframed the debate for the council, Potter insists that the hearing was not really about whether

to grant the car dealership's petition to vacate; it was about how best to vacate the streets in question. And in Potter's view that deprived the public of adequate notice of the true subject matter of the hearing.

¶39 Potter's frustration is understandable. She and other residents attended the public meeting believing they could persuade the city council not to close the streets. But this does not make the city's notice insufficient. The governing statute requires only that the public be given notice of the date, place, and time of the hearing on a given petition to vacate. That notice was given. And the subject of the hearing was in fact the car dealership's petition: That was the subject of the city council's deliberations; and the council's decision was, in fact, to grant that petition.

¶40 Potter's point, ultimately, is that the city attorney's advocacy affected the substance of the council's deliberations. But that is insufficient. Public hearings are unpredictable. City councilmembers and public commenters often try to reframe a debate in ways that favor their position. Yet that is not enough to obviate the sufficiency of the notice of a hearing. The public notice can never anticipate all of the twists and turns that may occur in a city council meeting. And the public notice is sufficient "as long as the items actually considered at the meeting are reasonably related to the subject matter indicated by the notice." *Suarez v. Grand Cty.*, 2012 UT 72, ¶ 74, 296 P.3d 688 (citation omitted).

¶41 This standard is easily satisfied here. The hearing was specifically and extensively focused on the petition to vacate that was mentioned in the notice. And the city attorney's comments didn't change that. The city attorney was offering views of relevance to the question presented to the council—of whether to grant the car dealership's latest petition. Because those views were "reasonably related" to the subject matter of the proceeding, there was no defect in the notice given by the city.

---