2022 UT App 74

## THE UTAH COURT OF APPEALS

OGDEN CITY PLAZA INVESTORS LTD.,
Appellant,
*v.*
OGDEN CITY BOARD OF ZONING ADJUSTMENT, OGDEN CITY, OGDEN
CITY PLANNING COMMISSION, AND GREG MONTGOMERY,
Appellees.

Opinion
No. 20200860-CA
Filed June 16, 2022

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 190902452

Nathan D. Westover, Attorney for Appellant

Stephen F. Noel and Kenneth D. K. Brown, Attorneys
for Appellees

JUSTICE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.[1]

HAGEN, Justice:

¶1     This case is about whether a drive-in restaurant is
permitted in a zoning district approved for "service station[s],
drive-in restaurant[s], gas pumps, [and] convenience stores."
Ogden City, Utah, Code § 15-34-2(A) (2021). We hold that it is.

---

1. Justice Diana Hagen began her work on this case as a judge of
the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

BACKGROUND

¶2    Appellant Ogden City Plaza Investors, Ltd. (the owner) owns commercial property located in the Central Business District (CBD) of Ogden City, Utah. The property is the site of a stand-alone building with a drive-through window and has been leased to various fast-food establishments over the past few decades. In August 2014, following a nearly six-year vacancy of the property, the city notified the owner that it had lost its nonconforming use rights to the drive-through window.[2] The owner responded to the notice, arguing that the drive-through window was in fact permissible in the CBD under the relevant zoning ordinance.

¶3    The issue arose again nearly four years later when the city informed the owner of its plans to construct a bike lane in front of the property. The owner wrote to the city, asserting that the constructed bike lane would block access to its drive-through, but efforts to resolve the issue failed.

¶4    The owner then sought a formal determination from the city's Planning Division that the drive-through was permitted under the zoning ordinance. The Planning Division disagreed with the owner's interpretation of the zoning ordinance and determined that the drive-through was not a permitted use. The owner unsuccessfully appealed that determination to the Board

---

2. Per Ogden City Code, a nonconforming use is

> [a] use of land that legally existed before its current land use designation, has been maintained continuously since the time the land use ordinance governing the land changed, and because of one or more subsequent changes to the zoning ordinance, or other land use ordinance, does not conform to the regulations that now govern the use of the land.

Ogden City, Utah, Code § 15-2-15 (2011).

of Zoning Adjustment. *See* Ogden City, Utah, Code § 15-5-1 (2021).

¶5 Undeterred, the owner sought judicial review. It argued that the Board's interpretation of the zoning ordinance was incorrect as a matter of law and that the drive-through was permitted in the CBD. The district court agreed with the Board's interpretation and declined to disturb its decision. The owner now appeals.

ISSUE AND STANDARD OF REVIEW

¶6 The owner challenges the district court's determination that the Board correctly interpreted the zoning ordinance.[3] "When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we afford no deference to the district court's decision." *Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, ¶ 12, 416 P.3d 389 (cleaned up). Like the district court, we will uphold the land use decision unless it was "arbitrary and capricious; or . . . illegal." *See* Utah Code Ann. § 10-9a-801(3)(b) (LexisNexis Supp. 2020). The owner's arguments go to illegality: whether the Board's decision was "based on an incorrect interpretation of a land use regulation." *See id.* § 10-9a-801(3)(c)(ii) (providing that a land use decision is illegal if that decision is "contrary to law"). This is a question of law, reviewed for correctness. *See Outfront Media*, 2017 UT 74, ¶ 12.

---

3. Because we agree with the owner's interpretation of the ordinance, we do not reach the alternative grounds for reversal advanced on appeal.

ANALYSIS

¶7     Municipal ordinances are subject to ordinary rules of statutory interpretation. *See Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 46, 424 P.3d 866. We therefore begin with the text, "presume that the [legislative body] used each word advisedly, and deem all omissions to be purposeful." *Id.* (cleaned up). Further, "[b]ecause zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, . . . provisions permitting property uses should be liberally construed in favor of the property owner." *Rogers v. West Valley City*, 2006 UT App 302, ¶ 15, 142 P.3d 554 (cleaned up).

¶8     Besides some prefatory language, the relevant zoning ordinance consists entirely of a "list of possible uses," organized by table. *See* Ogden City, Utah, Code § 15-34-2 (2021). Each possible use has its own row on the table, and rows are grouped into general categories (e.g., "Sales," "Services," "Institutional," and "Residential"). *See id.* In separate columns for two different zoning districts—the "Intensive District" and the CBD—the table indicates whether each possible use is permitted (P), not allowed (N), or "allowed only when authorized by a conditional use permit" (C). *See id.*

¶9     The parties agree that the property is located in the CBD. The parties also agree that the owner is using its property as a "drive-in restaurant" within the meaning of the ordinance.[4]

---

4. Below and on appeal, the parties consistently refer to the owner's property use as a drive-through restaurant. We question whether a "drive-through restaurant" is necessarily the same as a "drive-in restaurant," but we accept, for purposes of this case, the parties' stipulation that the property qualifies as a "drive-in restaurant" within the meaning of the ordinance.

"Drive-in restaurants" are addressed in two separate provisions, which we refer to as Use 1 and Use 2:

**15-34-2: USES:**

In the following list of possible uses, those designated in any district as "P" will be a permitted use. Uses designated as "C" will be allowed only when authorized by a conditional use permit obtained as provided in chapter 7 of this title. Uses designated as "N" will not be allowed in that district.

|     |        | Intensive District | CBD |
|-----|--------|--------------------|-----|
| A.  | Sales: |                    |     |

[Use 1:]

|     | An establishment engaged in preparing, serving and selling food and drink for human consumption on or off premises; provided that such use shall not include drive-in restaurants, e.g., restaurants, cafes, etc. | P | P |
|-----|---|---|---|

[Use 2:]

|     | Service station, drive-in restaurant, gas pumps, convenience stores. | N | P |
|-----|---|---|---|

*Id.* § 15-34-2 (2015).

¶10    The owner asserts that a drive-in restaurant is a permissible use under Use 2.[5] That provision indicates that the following is permissible in the CBD, but not in the Intensive District: "Service station, drive-in restaurant, gas pumps, convenience stores." *Id.* § 15-34-2(A). We read this provision as setting forth a list of discrete items demarcated by commas.

_____

5. Use 2 has since been amended. Although the text remains the same, Use 2 is no longer allowed in either the CBD or the Intensive District. *See* Ogden City, Utah, Code § 15-34-2(A) (2022). The Board's decision, however, was premised on the law then in effect, and we review the Board's decision accordingly. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829.

*See* Bryan A. Garner, *Garner's Modern American Usage* 748 (4th ed. 2016) ("[T]he comma separates items . . . in a list of more than two . . . ."). And absent any language to the contrary, we further read this provision as indicating that any of the discrete items, taken alone, qualifies as a property use contemplated by Use 2.[6] Because Use 2 plainly indicates that a "drive-in restaurant" is permitted in the CBD, the owner's use of the property complies with the zoning ordinance.

¶11   The city disagrees, arguing that Use 2 is a "mixed-use entry," satisfied only by "a facility that combines the . . . characteristics" of the discretely listed items. (Cleaned up.) In the city's view, a drive-in restaurant fails to qualify unless it is attached to a combination service station and convenience store that also has gas pumps. But we see little basis in the text for the city's interpretation, and the city cites no authority for the proposition that a list of items separated by commas must be read this way.

¶12   The city asserts that its mixed-use interpretation is supported by the *noscitur a sociis* canon of interpretation. That canon merely provides, however, that we can discern the meaning of a given term based on a "common feature" or "attribute"

---

6. We are aware that in the absence of a conjunction, a list of items is ordinarily read conjunctively (W, X, Y, and Z), not disjunctively (W, X, Y, or Z). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) ("This technique is termed *asyndeton* . . . . It is as though *and* were inserted between the items."). Here, however, that is a distinction without a difference. Either we must read Use 2 as indicating that service stations, drive-in restaurants, gas pumps, *and* convenience stores are permitted in the CBD; or that service stations, drive-in restaurants, gas pumps, *or* convenience stores are permitted there. The result is the same; under either reading, Use 2 allows a drive-in restaurant.

shared by nearby words. *See Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 30, 357 P.3d 992 (cleaned up); *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 10 n.5, 284 P.3d 600 ("The phrase means 'it is known from its associates.'" (cleaned up)). The *noscitur* canon is helpful, then, when discerning the meaning of one item contained within a list of other items—for instance, the meaning of item "B" within the list "A, B, C, D," based on what "A," "C," and "D" have in common. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012) ("The canon especially holds that words grouped in a list should be given related meanings."). Yet that is not what the city asks us to do. Rather, the city invokes the *noscitur* canon for the proposition that Use 2 describes a single type of "facility that combines the . . . characteristics" of each item in the list—that "A, B, C, D" necessarily means "A+B+C+D." But that is incorrect. The *noscitur* canon does not instruct us to construe a list of discrete items as a singular item bearing the characteristics of each. And it is not necessary for us to determine the meaning of "drive-in restaurant" by reference to the other items in the list because the parties agree that the property is a "drive-in restaurant" within the meaning of the ordinance.

¶13 Moving outward, the city then argues that this interpretation of Use 2 clashes with how other entries in the table are structured. For instance, it directs us to an entry in the "Manufacturing" category of the table, which relates to "[m]anufacturing of food products for human consumption . . . ; provided, that not more than 15 percent of the floor area is used for the manufacturing process, the street frontage is used for permitted sales uses, and no deliveries of the produced product by delivery truck are allowed." Ogden City, Utah, Code § 15-34-2(G). In the city's view, this provision clearly sets forth a list of items separated by commas, and all items are required to satisfy the condition. Consequently, were we to read this provision the same way that we interpret Use 2 (i.e., that only one of the listed items is sufficient), the city argues that the result would be "absurd."

¶14    The city is correct that, in striving to "produce a harmonious whole," we tend to read similarly structured subsections the same way. *See State v. Hatfield*, 2020 UT 1, ¶ 16, 462 P.3d 330 (cleaned up); *see also, e.g., State v. Liti*, 2015 UT App 186, ¶¶ 13–16, 355 P.3d 1078 (relying on a similarly structured statute to inform the meaning of the statute at issue). But we perceive no dissonance between our interpretation of Use 2 and the city's interpretation of the manufacturing provision. The difference is that the list of items separated by commas in the manufacturing provision are not stand-alone uses of property but are instead limitations on the "manufacturing of food products for human consumption." And the manufacturing provision contains other language indicating that all discretely listed items are required ("provided, that [A, B, and C]"), whereas Use 2 does not. *Compare* Ogden City, Utah, Code § 15-34-2(G), *with id.* § 15-34-2(A). Moreover, accepting the city's invitation to look elsewhere in the table for guidance, we see several entries structured like Use 2 that make little sense when read as mixed-use entries (e.g., "Lodging houses, boarding houses, single room occupancies"; and "Halfway houses, prisons"). *See id.* § 15-34-2(C)–(D) (2015). Indeed, we see no other indication in the table that Use 2 does not allow stand-alone drive-in restaurants.

¶15    The city further argues that we should read Use 2 in tandem with Use 1. Unlike Use 2, Use 1 is permitted in both the CBD and the Intensive District. Use 1 describes "an establishment engaged in preparing, serving and selling food and drink for human consumption on or off premises; provided that such use shall not include drive-in restaurants, e.g., restaurants, cafes, etc." *Id.* § 15-34-2(A). The parties agree that Use 1's limitation on drive-in restaurants means that the owner's property does not qualify as a permitted use under this entry in the table. But whereas the owner contends that drive-in restaurants are nevertheless permitted in the CBD via Use 2, the city argues that Use 1 affirmatively prohibits them altogether. In other words, because Use 1 is permitted in both the CBD and the Intensive District, the

city reasons that stand-alone drive-in restaurants are not allowed in either district. We disagree.

¶16    As stated in the prefatory language, the zoning ordinance merely contains a "list of possible uses"; it is not a comprehensive list of requirements, all of which must be met before a use is deemed permissible. The table sets forth a description of the possible use, then indicates whether it is permitted, not allowed, or "allowed only when authorized by a conditional use permit" in either the CBD or the Intensive District—nothing more. So, when the table indicates that a possible use is permitted in one or both of the districts, it simply means that a property use fitting that description is affirmatively allowed there. Any negative requirements or qualifiers within the description are self-contained; they merely limit the scope of that specific entry and do not affect whether a given property use fits the description of an entirely different entry in the table. *Cf. Halversen v. Allstate Prop. & Cas. Ins. Co.*, 2021 UT App 59, ¶ 12, 493 P.3d 693 ("[M]aterial within an indented subpart relates only to that subpart . . . ." (cleaned up)). Correctly interpreted, then, Use 1's limitation on drive-in restaurants does not affect whether a property use comports with Use 2. It restricts the otherwise unlimited field of "establishment[s] engaged in preparing, serving, or selling food and drink" that would be swept up in Use 1.

¶17    This interpretation makes structural sense, too. Use 2 is permitted only in the CBD and, therefore, is more restrictive. And Use 1's limitation on drive-in restaurants prevents it from otherwise permitting any "establishment engaged in preparing, serving and selling food and drink"—even a drive-in—in the Intensive District. Additionally, were we to interpret these provisions as the city asks—Use 1 as an across-the-board prohibition on drive-ins and Use 2 as a mixed-use entry—the two would be hard to reconcile. That is, a mixed-use drive-in restaurant is still a drive-in restaurant and would therefore be prohibited under the city's interpretation of Use 1.

¶18    Lastly, the city directs us to a report prepared by the Board's staff for the purpose of recommending a decision in the owner's appeal to the Board. The report suggests that Use 2 was intended as a mixed-use entry. The report cites no legislative history or other evidence supporting its interpretation, and we would not consider such evidence in any event because we do not find the ordinance to be ambiguous. *See Scott v. Wingate Wilderness Therapy, LLC*, 2021 UT 28, ¶ 50, 493 P.3d 592 (explaining that when "the plain language of the statute is clear, we need not reach for legislative history to aid our understanding"). Moreover, we give no deference to the Board's interpretation of the ordinance. *See Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 25, 322 P.3d 712 (explaining that we have a "de novo prerogative of interpreting [state] law, unencumbered by any standard of agency deference"). Therefore, the staff report's interpretation carries no weight.

¶19    We conclude that the Board's interpretation is not supported by the text of the ordinance. From our perspective, Use 2 plainly permits "drive-in restaurant[s]" in the CBD. Because both parties agree that the property is a "drive-in restaurant" located within the CBD, we reverse the district court and hold that the Board incorrectly concluded that the zoning ordinance prohibited the owner's use of the property.

CONCLUSION

¶20    The Board incorrectly determined that the zoning ordinance did not permit a stand-alone "drive-in restaurant" in the CBD. Therefore, we reverse and remand to the district court with instructions to set aside the Board's decision.

_____