2025 UT App 85

# THE UTAH COURT OF APPEALS

MICHAEL COOK, MICHAEL BARTON, AND THE DEFENDERS OF
GREATER IVINS,
Appellants,
*v.*
IVINS CITY AND EWD, LLC,
Appellees.

Opinion
No. 20230768-CA
Filed May 30, 2025

Fifth District Court, St. George Department
The Honorable Keith C. Barnes
No. 220500679

Justin D. Heideman and Justin R. Elswick,
Attorneys for Appellants

Bryan J. Pattison, Attorney for Appellee Ivins City

Matthew J. Ence, Jeff R. Miles, and Devon J.
Herrmann, Attorneys for Appellee EWD, LLC

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred as to
Part II. JUDGE HARRIS authored a separate opinion that is joined,
in part and as to the result, by JUDGE LUTHY. JUDGE LUTHY also
authored a separate opinion.

TENNEY, Judge:

¶1     In September 2022, the Ivins City Council voted to approve a zoning change that allowed development on a large plot of land. A group of residents filed a petition asking a district court to review that change, arguing that the vote was taken in violation of various provisions of the city code and that their due process rights were violated. The district court rejected both arguments,

and the residents now appeal. For the reasons set forth below, we affirm the district court's decision.

BACKGROUND

¶2     In April 2022, EWD, LLC (Developer) applied for a zoning change for 113 acres of property located in Ivins City (the City). The City's planning commission "held a public hearing on the request," "recommended that the zone be changed," and then sent the application and its recommendation to the city council. On September 1, 2022, the city council, led by the mayor, held a meeting that included both a public hearing and a discussion to consider and vote on the proposed zoning change. At the meeting, and prior to opening the public hearing, the city manager explained that Developer sought to change the property's zoning from single family residential to resort commercial, with the intent being to build a resort on the property as well as a mix of other commercial and residential buildings.

¶3     Following some initial discussion, the mayor opened the hearing for public comment. Many residents, including Michael Cook and Michael Barton, offered their thoughts. Most of the residents who spoke, including Cook and Barton, opposed the proposed zoning change, expressing concerns about the need for more affordable housing options in the City and an aversion to short-term rental properties. Altogether, the public hearing portion of the meeting lasted for nearly an hour, with several residents using more than their allotted comment time by speaking on behalf of other residents. In addition to offering comments during the public hearing, some residents had also emailed written statements to the city council beforehand. The mayor assured the attendees that "we want every one of you who has something important to contribute to this discussion[] to do it and so we'll stay here as long as that takes."

¶4     After the public hearing concluded, the councilmembers again discussed the proposed zoning change. Councilmember

Scott eventually made a motion to deny the proposed zoning change, which Councilmember Mehr seconded. This motion failed 3-to-2, with Councilmembers Scott and Mehr voting yes, and Councilmembers Murphy, Anderson, and Johnson voting no. Councilmember Murphy then moved to approve the proposed zoning change, and Councilmember Anderson seconded the motion. But this motion also failed 3-to-2, with Councilmembers Murphy and Anderson voting yes, and Councilmembers Mehr, Scott, and Johnson voting no. When it came time to cast her vote, Councilmember Johnson said, "I'm going to say Nay at the moment because I would like a little more clarification, but we may go back to the same."

¶5 The city council then engaged in further discussion about the proposed zoning change, during which the council members were given more information about both the project and the potential conditions that could later be placed on it. After this discussion, the mayor asked for a third motion "if someone [was] prepared to give it." Councilmember Murphy then "renew[ed]" the motion she had "made earlier"—i.e., her earlier motion to approve the proposed zoning change. Councilmember Anderson seconded this motion. This motion passed 3-to-2, with Councilmember Johnson now voting, without reservation, to approve the zoning change.

¶6 Later that month, Cook, Barton, and a group of residents who call themselves The Defenders of Greater Ivins filed a petition for review with the district court. They have litigated the case together ever since (including on appeal), and for convenience, we'll refer to them as "Cook" moving forward (given that Cook was the first-named petitioner). In the petition, Cook pleaded several causes of action. Three of them matter for purposes of this appeal.

¶7 First, Cook requested a declaratory judgment that under section 2.06.401 of the Ivins City Code, Councilmember Murphy should not have been allowed to make a motion to "renew" the motion to approve the proposed zoning change. This was so, in

Cook's view, because Councilmember Murphy was in the minority when the council took a vote on the earlier motion to approve the proposed zoning change, and section 2.06.401(2)(a) states that a "request to reconsider" "must be made by a member who voted with the majority." Second, Cook asserted that the vote on the renewed motion violated section 2.06.401(1) because there was insufficient justification to reconsider the earlier denial.[1] And third, Cook asserted that the City had violated his due process rights by passing the zoning change. Based on these and the other causes of action, Cook asked the district court to stay and then invalidate the zoning change.

¶8 Over Cook's objection, the district court allowed Developer to intervene in the case. The City and Developer then each filed a memorandum opposing the petition. After oral arguments, the district court issued a written ruling concluding that Cook was not entitled to relief. With respect to the alleged violations of the Ivins City Code, the court concluded that under both state laws governing municipal ordinances and provisions of the Ivins City Code itself, Cook was only entitled to relief if he established that he had been prejudiced by the alleged violations of the city code. The court then concluded that it was "not reasonably likely" that any of the alleged violations "changed the outcome of the proceeding." With respect to the due process claim, the court concluded that there was no violation of Cook's due process rights because "members of the public, including the

---

1. Under Ivins City Code section 2.06.401(1), a "request for reconsideration shall be based on one or more of the following: (a) [t]he prior decision was arbitrary, capricious or otherwise illegal; (b) [t]here was some material irregularity in the proceedings when the matter was previously voted on by the public body that makes the previous decision improper; or (c) [there is] [n]ewly discovered evidence." Ivins City Code § 2.06.401(1), https://codelibrary.amlegal.com/codes/ivinsut/latest/ivins_ut/0-0-0-577 [https://perma.cc/PR9Q-T7QR].

named-petitioners, were present at the public hearing and were heard by the City Council."

ISSUES AND STANDARDS OF REVIEW

¶9 Cook raises two issues on appeal. First, Cook claims that he was prejudiced by the "procedural irregularit[ies]"—i.e., the alleged violations of the Ivins City Code—that occurred in conjunction with the vote to approve the zoning change. "When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we afford no deference to the district court's decision." *Ogden City Plaza Invs. Ltd. v. Ogden City Board of Zoning Adjustment*, 2022 UT App 74, ¶ 6, 514 P.3d 562 (quotation simplified).

¶10 Second, Cook claims that his due process rights were violated when the City approved the zoning change. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness. However, because these questions require the application of facts in the record to the due process standard, we incorporate a clearly erroneous standard for the necessary subsidiary factual determinations." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (quotation simplified).

ANALYSIS

I. Procedural Irregularities[2]

¶11 As noted, the Ivins City Council took three votes on the proposed zoning change:

---

2. As noted in the caption, Part I of this opinion represents the views of Judge Tenney only. Judge Harris has filed a separate
(continued…)

- In the first vote, the council rejected a motion to deny it, with Councilmember Johnson voting in the majority.

- In the second vote, the council rejected a motion to approve it, with Councilmember Johnson tentatively voting in the majority and stating, "I'm going to say Nay at the moment because I would like a little more clarification, but we may go back to the same."

- In the third and final vote, which was proposed by Councilmember Murphy, the council approved a motion to approve the proposed zoning change, with Councilmember Johnson again voting in the majority.

¶12    On appeal, Cook argues, as he did below, that the third vote was unlawful because of two procedural irregularities.

¶13    First, Cook points to Ivins City Code section 2.06.401(2)(a), which states, "During the meeting in which an agenda item has been voted on, the public body may reopen the matter by simple majority vote and reconsider their decision. The request to reconsider the matter must be made by a member who voted with the majority." In Cook's view, the third motion was improper because it was made by Councilmember Murphy, who had been in the minority on the second vote.

¶14    Second, Cook points to Ivins City Code section 2.06.401(1), which states that a "request for reconsideration shall be based on one or more of the following: (a) [t]he prior decision was arbitrary, capricious or otherwise illegal; (b) [t]here was some material irregularity in the proceedings when the matter was previously voted on by the public body that makes the previous decision improper; or (c) [there is] [n]ewly discovered evidence." Cook

---

opinion as to this issue that is joined in part and as to the result by Judge Luthy, and the portion joined by Judge Luthy thus represents the controlling opinion as to this issue. Judge Luthy has also filed a separate opinion relating to this issue.

argues that there was not a sufficient ground under any of these provisions that would allow the proposed zoning change to be reconsidered.

¶15   In rejecting Cook's claims below, the district court appeared to assume that the third vote was a reconsideration vote for purposes of section 2.06.401 and that the vote was a violation of these "reconsideration" provisions, but it then concluded that any violation of these provisions was harmless.

¶16   As I explain more fully below, I agree with the district court's approach. Before explaining why this is so, I think it's appropriate to first briefly explain why I would not decide this issue on any of the alternative grounds proposed by my colleagues in the two separate opinions. First, Judge Harris (joined by Judge Luthy) concludes that the reconsideration rules set forth in section 2.06.401 didn't need to be followed because the "agenda item" and "matter" had not been closed at the time of the third vote.  Ivins City, Utah, Code § 2.06.401(2)(a). On the plain language of section 2.06.401(2)(a), I think this could plausibly go either way. But no party—including, of some note, the City itself—has proposed this interpretation to us as a solution to this issue, so I'm uncomfortable deciding this case on this ground.[3] For a similar reason, I decline to join Judge Luthy's alternative suggestion that the reconsideration rules set forth in section

---

3. As Judge Harris points out, there are cases allowing an appellate court to adopt its own interpretation of a statute (or, as here, an ordinance) when the court concludes that the interpretations offered by the parties are lacking. I have no quarrel with that principle. But where I part ways with my colleagues is in their conclusion that this is the best way to resolve this appeal. As I explain below, I'm persuaded by the district court's conclusion that, even if this was a reconsideration scenario for purposes of Ivins City Code section 2.06.401(2)(a), Cook was not prejudiced by any alleged procedural irregularity that may have occurred. In light of that, I don't think we need to interpret the "agenda item" and "matter" provisions to resolve this case.

2.06.401(1) were possibly invalid under state law because they improperly tied the hands of the city council. No party has advanced this argument either, and an opinion from this court along those lines could have wide-ranging downstream implications for other city codes and other cases. Without the benefit of a request from a party or adversarial testing, I would not base our opinion on this rationale. Finally, Judge Harris proposes a third path, which rests on the suggestion that because Councilmember Johnson's vote on the second motion was not definitive, the council did not need to invoke the reconsideration procedures. On a gut level, I share Judge Harris's suspicion that Councilmember Johnson may have intended to simply defer her vote on the second motion. But the mayor understood her to have voted no, as evidenced by the fact that, in the ensuing discussion, he twice referred to the second motion as having "failed," and Councilmember Johnson didn't push back either time. The official minutes likewise state that the second motion "failed." Since those on the scene understood Councilmember Johnson to have voted no, I think that remains the fairest reading of the record.

¶17 The real reason that I think it's ultimately unnecessary to decide this issue on any of these bases, however, is that I agree with the rationale that the district court itself gave for denying Cook's request for relief—namely, that Cook was not prejudiced by any procedural error that may have occurred.

¶18 As explained by our supreme court, "parties challenging a land use decision must establish that they were prejudiced by the city's noncompliance with its ordinances." *Potter v. South Salt Lake City*, 2018 UT 21, ¶ 24, 422 P.3d 803 (quotation simplified). To obtain relief, a party must show "how, if at all," the decision in question "would have been different" without the alleged violation. *Springville Citizens for a Better Cmty. v. City of Springville*, 1999 UT 25, ¶ 31, 979 P.2d 332. While this standard "should not be insurmountable," it does require a showing "that there is a reasonable likelihood that the legal defect in the city's process changed the outcome of the proceeding." *Potter*, 2018 UT 21, ¶ 33.

¶19　Again, Cook's initial complaint is that the third motion was made by Councilmember Murphy, even though she was in the minority on the earlier motion to approve the zoning change. But I see no reasonable likelihood that this alleged violation of the city code would actually have changed anything. Since Councilmember Johnson was in the majority on the second vote, she would have been authorized to make the motion to reconsider. And there's no reason to think that she wouldn't have done so if necessary. After all, even if Councilmember Johnson's vote on the second motion is treated as a "Nay" vote, it certainly wasn't emphatic. Rather, Councilmember Johnson said that she wanted "a little more clarification," after which "we may go back to the same." And after the council then had more discussion, she voted to approve the zoning change, thus showing in the most direct way possible that she was now in favor of it. As a result, I see no reason to conclude that she wouldn't have made a motion to reconsider if it were necessary to accomplish that end.

¶20　Cook next argues that, even if Councilmember Johnson had made the motion to reconsider, there was still not a sufficient ground to allow the council to reconsider the matter. Cook points out that under Ivins City Code section 2.06.401(1), a "request for reconsideration shall be based on one or more of the following: (a) [t]he prior decision was arbitrary, capricious or otherwise illegal; (b) [t]here was some material irregularity in the proceedings when the matter was previously voted on by the public body that makes the previous decision improper; or (c) [there is] [n]ewly discovered evidence." In Cook's view, none of those conditions were present here.

¶21　But I see no reasonable probability that, if Cook had objected under section 2.06.401(1), this objection would have been successful—either below or when later reviewed by a court. Under this provision, the council could reconsider a matter if there had been "some material irregularity in the proceedings when the matter was previously voted on by the public body that makes the previous decision improper." Ivins City, Utah, Code § 2.06.401(1)(b). Here, there had been a "material irregularity in

the proceedings"—namely, there had just been two conflicting votes on a proposed zoning change. *Id.* In the first motion, the council rejected a vote to *deny* that proposed zoning change, but in the second motion, the same council rejected a vote to *approve* that same proposed zoning change. As a result, this important proposal was now left in limbo, and it was an internally inconsistent limbo at that. If the council did not take another vote, the project wouldn't be allowed to move forward (because it wouldn't have the necessary zoning change). In practical effect, this would function as a denial of the proposed change, which seems highly irregular to me since the council had just specifically rejected a motion to deny the proposed change. And for the same reason, allowing the opponents of the proposed zoning change to essentially prevail (by virtue of the failed second vote) despite a majority of the council having expressly voted against their position in the first vote, would make continued reliance on either of the "previous decision[s] improper." *Id.*

¶22　In this circumstance, Developer and the broader public alike could certainly expect some affirmative resolution by the city council either way. Something had to give, and I believe that this provision gave the council the mechanism it needed for resolving the conflict. This accordingly seems to me to be the very kind of "material irregularity in the proceedings" that would allow the council to take another vote, thereby allowing it to break the impasse. *Id.* I therefore see no likelihood, much less a reasonable likelihood, that an objection under Ivins City Code section 2.06.401(1) would have prevented the council from reconsidering the issue or doing what it ultimately did. For these reasons, I would affirm the district court's conclusion that Cook has not carried his burden of establishing that he was prejudiced by the claimed error, and I would affirm the decision below on this basis.

## II. Due Process

¶23　Cook also claims that his due process rights were violated because he was "not permitted to comment or provide input" in

between the second and third votes. According to Cook, this violated his due process rights because he wasn't able to counter any of the new information that was presented and discussed between those votes. In response, Developer claims that Cook had no applicable due process rights at all because Cook did not have a "protectible property interest" at stake in this vote. (Citing *Petersen v. Riverton City*, 2010 UT 58, ¶ 21, 243 P.3d 1261.) But we need not answer that question. Even assuming that Cook did have a protectible interest, we conclude that his due process rights were not violated.

¶24    "At a minimum, due process requires timely and adequate notice and an opportunity to be heard in a meaningful way." *Springdale Lodging, LLC v. Town of Springdale*, 2024 UT App 83, ¶ 31, 552 P.3d 222 (quotation simplified). "Mere notice is an empty gesture if it is not accompanied by a meaningful chance to make your case," and that "includes the opportunity to present evidence and argument on that issue before decision." *Id.* (quotation simplified). "But the level of due process required depends on the context of the proceeding." *Long v. Ethics & Discipline Comm. of the Utah Sup. Ct.*, 2011 UT 32, ¶ 29, 256 P.3d 206. In this sense, the inquiry is "flexible and calls for the procedural protections that the given situation demands." *Id.* (quotation simplified).

¶25    Here, Cook and the other members of the public all had ample opportunity to be heard—both before the planning commission and during the public hearing at the city council meeting—about their reasons for opposing the proposed zoning change. And in addition to giving nearly an hour's worth of oral comments during the public hearing before the city council alone, residents submitted written comments by email prior to the meeting.[4]

---

4. Notably, state law does not require that a city council hold a public hearing before voting on a proposed zoning change, only

(continued…)

¶26 Cook does not argue that these opportunities for public comment were somehow constitutionally inadequate. Instead, his complaint is that he didn't get an additional opportunity to speak again at the same meeting after the council members were presented with new information and engaged in additional debate. But Cook points to no authority holding that a citizen has a right to a new opportunity to be heard each time a government body considers some new point or in between successive rounds of voting. Many authorities suggest that there is no such right. *See, e.g., United States v. Batson*, 782 F.2d 1307, 1315 (5th Cir. 1986) ("Due process requires only that there is at some stage an opportunity for a hearing." (quotation simplified)); *In re City of Chicago*, 500 F.3d 582, 585 (7th Cir. 2007) ("The due process clause entitles every litigant to a full and fair opportunity to be heard; it does not entitle anyone to be heard on the same question over and over."); *In re Beery*, 680 F.2d 705, 712 (10th Cir. 1982) ("While due process includes the right to be heard, it does not include the right to be heard a specific number of times on appeal.").

¶27 Logic does too. In the context of municipal decision making, it would not be unheard of for there to be back-and-forth discussions in which new points or ideas were discussed. If Cook's argument were correct, this would essentially mean that citizens, as opposed to legislators, have a constitutional right to always have the last word before any vote occurs. We see no basis for imposing such a requirement—either categorically or instead within the particular context of this case. Having carefully reviewed the record of these proceedings, we conclude that the citizens in question were given a meaningful opportunity to be

---

that the city's planning commission hold a public hearing before sending its recommendation on the proposed change to the city council. *See* Utah Code § 10-9a-502(1), (2) (requiring a planning commission to "hold a public *hearing* on a proposed land use regulation," while requiring the "legislative body," i.e., the city council, to simply "hold[] a public *meeting*" before adopting or rejecting the proposed "land use regulation" (emphases added)).

heard about whether this proposed zoning change should be approved. We therefore reject this claim.

CONCLUSION

¶28    Cook has failed to show that he was prejudiced by any procedural irregularities, and he has likewise failed to show that his due process rights were violated. We accordingly affirm.

———————

HARRIS, Judge (concurring in part and concurring in the result):

¶29    I join the lead opinion's factual recitation, as well as Part II of its legal analysis. And I concur in the result the lead opinion reaches, namely, that the district court's decision should be affirmed. As to Part I of the lead opinion, I agree with that opinion's ultimate conclusion that the city council committed no prejudicial procedural error in its consideration of the zoning change at issue here. But instead of focusing on whether any procedural error was prejudicial, I focus on whether there was any procedural error at all, and I conclude that there wasn't. On that basis, I likewise vote to affirm the district court's decision.

¶30    Both of the asserted procedural errors to which Cook points turn on provisions from the Ivins City Code that are applicable to a motion to reconsider. Here, though, what happened cannot, in context, fairly be described as "reconsideration," and therefore the portions of the Ivins City Code upon which Cook relies do not apply. This is so for two related reasons.

¶31    First, Councilmember Johnson did not definitively vote "no" the first time the motion to approve the zoning change came up for a vote. To be sure, she used the word "Nay" when describing her vote. But her complete sentence was as follows: "I'm going to say Nay at the moment because I would like a little more clarification, but we may go back to the same." After that statement, the city council, supplemented by solicited comments

from legal counsel and others, engaged in continued lengthy discussion—which Developer claims lasted "about a half hour"—regarding some of the particulars of the proposed zoning change. And after that extended discussion, Councilmember Johnson apparently got the "clarification" she needed, because she then voted, without reservation, to approve the zoning change. In context, then, my best reading of the record is that Councilmember Johnson simply indicated that she couldn't yet go along with the motion to approve but that she wanted to postpone any definitive vote on the pending motion until further discussion could be had that might lead to "clarification" of certain issues.

¶32    Second, and relatedly, one cannot "*re*consider" a matter that one is still in the middle of considering in the first instance. Indeed, the relevant provision of the Ivins City Code—the one that covers "reconsideration[s]" made "[d]uring the meeting in which an agenda item has been voted on"—recognizes this reality and places restrictions only on the ability of "the public body" to "*reopen* the matter." Ivins City Code § 2.06.401(2)(a) (emphasis added). Moreover, the "matter" referred to in this provision is the "agenda item" at issue, rather than any specific proposed resolution to that agenda item. *See id.* ("During the meeting in which *an agenda item* has been voted on, the public body may reopen *the matter* by simple majority vote and reconsider their decision." (emphasis added)). In my view, the inescapable import of those words is that the provision restricts only efforts, within the same meeting, to "reopen" an agenda item that has already been closed.[5] But here, the matter of the proposed zoning

---

5. Judge Tenney is skeptical of my willingness to consider this interpretation of the relevant municipal ordinance, because none of the parties advances this interpretation in their briefs. *See supra* ¶ 16. Like Judge Tenney, I too am puzzled about why the City, in particular, does not advance this interpretation. But the parties' failure to advance it does not mean we cannot consider it. Without a doubt, the parties to this appeal have placed the interpretation and meaning of section 2.06.401 of the Ivins City Code—including

(continued…)

change—the relevant "agenda item"—had not yet been closed prior to the renewed vote on the motion to approve. As noted, after Councilmember Johnson's statement saying "Nay at the moment" and wanting "more clarification," the city council continued to discuss the proposed zoning change at some length. And it was still engaged in that same uninterrupted discussion, about the same agenda item, when Councilmember Murphy indicated that she was "renewing the motion" to approve. In context, Councilmember Murphy's motion cannot realistically be construed as a motion to *re*consider the matter, because the city council had not yet stopped considering the relevant agenda item in the first place.

---

specifically the meaning of subsection (2)(a) of that ordinance— squarely before us. And when parties place the interpretation and meaning of a particular statutory provision (or a rule, or a municipal ordinance) squarely before an appellate court, that court's interpretive analysis is not limited by the parties' respective interpretations. *See Midwest Family Mutual Ins. v. Hinton*, 2025 UT 4, ¶¶ 37–59 (analyzing and rejecting the various interpretations of a statute that were advanced by the parties and by the district court, and concluding that the supreme court's own interpretation of the statute—one not advanced by any of the parties—was the correct one); *see also Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998) (stating, in a rule-interpretation case, that "[w]e should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments"). After all, "[w]hen interpreting a statute, a court is not bound to rely only on information the parties provide." *In re B.T.B.*, 2020 UT 60, ¶ 40, 472 P.3d 827; *see also GeoMetWatch Corp. v. Utah State Univ. Research Foundation*, 2018 UT 50, ¶ 31, 428 P.3d 1064 ("[W]e are not bound by the parties' interpretation of a statute."). "Stated differently, the parties cannot force a court into a strained interpretation of a statute by the arguments they advance." *In re B.T.B.*, 2020 UT 60, ¶ 40. "A court's duty is to get the law right and parties cannot push us off that path." *Id.*

¶33 For these reasons, the city council did not engage in a "reconsideration" of its resolution of the proposed zoning change. Accordingly, I do not discern any procedural error here on the part of the city council, whether prejudicial or not, and I reject Cook's arguments to the contrary. On that basis, I therefore agree—albeit for somewhat different reasons—with the lead opinion's ultimate conclusion in Part I that Cook has not carried his burden of establishing prejudicial procedural error.

¶34 Because I agree with the ultimate conclusion the lead opinion reaches in Part I, and because I agree wholeheartedly with the remainder of that opinion, I likewise vote to affirm the district court's order.

———

LUTHY, Judge (concurring in part and concurring in the result):

¶35 Like Judge Harris, I join the lead opinion's factual recitation, Part II of its legal analysis, and the result it reaches in Part I of its legal analysis. I also join a dispositive portion of Judge Harris's concurring opinion, making that portion of his opinion the controlling word on the first issue in this appeal. I write separately to identify and explain the disagreements I have with my colleagues' respective analyses on that issue.

¶36 "The enactment and amendment of zoning ordinances is fundamentally a legislative act," *Bradley v. Payson City Corp.*, 2003 UT 16, ¶ 11, 70 P.3d 47 (quotation simplified), and the city council is the City's legislative body, *see* Utah Code § 10-3b-105(1). A legislative body's inability to reach resolution on a particular matter even after multiple votes is not unusual, especially at the local level, where preliminary procedural steps such as committee hearings and multiple readings of proposed legislation are generally not employed. Ongoing debate, deliberation, compromise, reflection, and reconsideration are all ordinary and inherent components of the legislative process. Thus, absent a constitutional or statutory imperative indicating otherwise (and none has been identified for us), I see little to suggest any "material irregularity" and certainly nothing separately

"improper" in the failure of a municipal legislative body to reach resolution regarding a legislative proposal—either by passing it or by definitively defeating it—after two votes. Accordingly, unlike Judge Tenney, I do not view the city council's first two votes on the proposed zoning change as providing grounds for reconsideration under section 2.06.401(1) of the Ivins City Code. And for this reason, I do not join his contrary analysis and conclusion in Part I of the lead opinion.[6]

---

6. While I do not agree that the council's first two votes provided grounds for reconsideration under section 2.06.401(1), I have questions about the validity of section 2.06.401(1) to impede the city council's ability to exercise its legislative powers in the first instance. As already noted, section 2.06.401(1) restricts the city council's reconsideration of any matter unless (a) its prior decision "was arbitrary, capricious or otherwise illegal"; (b) "[t]here was some material irregularity in the proceedings when the matter was previously voted on . . . that makes the previous decision improper"; or (c) "[n]ewly discovered evidence" has since come to light. Ivins City Code § 2.06.401(1). At first blush at least, this provision requires the city council to take a once-and-done approach to legislative decision making. It appears that under it, after a legislative matter has once been considered, the council is powerless to ever address it again—either in that meeting or any other—absent extraordinary circumstances. A councilmember's changed view of the matter, the emergence of a compromise approach to the proposal, or even an intervening election that changes the composition of the legislative body notwithstanding, the city council appears to be flatly prohibited from reconsidering any legislative matter in the ordinary course. Such a restriction seems difficult to square with the Utah Legislature's plenary grant of authority to the city council to "exercise[] the legislative powers and perform[] the legislative duties and functions of the municipality." Utah Code § 10-3b-105(1). However, the ultimate validity of section 2.06.401(1) need not be resolved here because, as explained below,

(continued…)

¶37    In his concurring opinion, Judge Harris concludes, for two reasons, that the third motion on the proposed zoning change cannot fairly be described as a "reconsideration" and, thus, that the city council committed no procedural error. The first reason he gives is that Councilmember Johnson's nay vote on the second motion was really an indication that she wanted to postpone any definitive action on that motion. *See supra* ¶ 31. I agree that this appears to have been her intent. However, Councilmember Johnson's individual intent cannot be construed as the action of the council. A legislative body acts only as a body, not through the voice or intent of a single member. Hence, Councilmember Johnson's expressed inclination to merely postpone a vote on the second motion never became the action of the council. Instead, as a body, the council voted on—and rejected—the second motion. The council acknowledged in the moment the result of that vote, and it recorded that result in its minutes. For this reason, I do not join the analysis in paragraph 31 of Judge Harris's concurring opinion.

¶38    The second reason Judge Harris gives for why the third motion cannot be fairly described as a "reconsideration" is that a matter cannot be *re*considered while it is still being considered in the first instance; the "matter" referred to in section 2.06.401 is the "agenda item" at issue, not any particular motion regarding that item; and, thus, because consideration of the agenda item at issue here—the proposed zoning change—had not been closed, the third motion regarding that proposed change did not constitute a reconsideration of the matter. *See supra* ¶¶ 32–33. I agree with this analysis and join this portion of Judge Harris's concurring opinion. On that singular basis, I am also able to agree with the lead opinion's ultimate conclusion that Cook has not carried his burden of establishing prejudicial procedural error.

———————

I agree with Judge Harris that the recurring votes on the proposed zoning change did not amount to reconsiderations of the matter.